# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

DANGELO SHAUN LUX, and
LORENZO NETTLES,

               Plaintiffs,

                                     Case No. 20-CV-1057

      v.

CITY OF WHITEWATER,
AARON RAAP, ADAM
VANDER STEEG, MIKE
ZENS, JUSTIN STUPPY,
WALWORTH COUNTY,
RICHARD JOHNSON and
KURT PICKNELL,

               Defendants.

---

## DEFENDANTS CITY OF WHITEWATER, AARON RAAP, ADAM VANDER STEEG, MIKE ZENS, AND JUSTIN STUPPY'S MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

---

      Defendants City of Whitewater, Aaron Raap, Adam Vander Steeg, Mike Zens, and Justin Stuppy (the "Whitewater Defendants" or "Whitewater Officers") by their attorneys, Gunta Law Offices, S.C., submit this Memorandum in Support of their Motion for Summary Judgment seeking dismissal of all claims against them.

### INTRODUCTION

      This case arises out of the September 20, 2018, Plaintiffs Dangelo Lux and Lorenzo Nettles, by Defendant Officers Adam Vander Steeg, Mike Zens, and Richard Johnson, for disorderly and objectionable conduct after Lieutenant Vander Steeg observed the Plaintiffs attacking their second victim of the night, Jack Piper. (Defendants' Proposed Findings of Facts [hereinafter "DPFF"] Nos. 1-2, 32-84) Specifically, City of Whitewater Lieutenant Vander Steeg

saw and heard Plaintiffs yelling and pushing Jack Piper backwards across Freemont Street. (DPFF 32-33) Lieutenant Vander Steeg quickly responded and he ordered that all three males, including the victim, Piper, come to him. (DPFF 34, 36) Piper complied, however Lux and Nettles walked away from Lieutenant Vander Steeg. (DPFF 34, 37-38) Lieutenant Vander Steeg repeatedly commanded Lux and Nettles to walk towards him—both refused to comply. (DPFF 39-41)

Lieutenant Vander Steeg followed Lux and Nettles and ordered that Lux place his hands behind his back. (DPFF 39-41) Lux, who was a 6'1 and 280-pound defensive lineman for the University of Wisconsin-Whitewater football team, refused to place his hands behind his back, and overpowered Lieutenant Vander Steeg's continued attempts to place his hands behind his back. (DPFF 16, 44-46) During Lieutenant Vander Steeg's struggle with Lux, Nettles approached Lieutenant Vander Steeg from behind, despite his orders that Nettles get back or he would get tasered. (DPFF 47-50) Lieutenant Vander Steeg quickly realized that he was in a dangerous position because he was outnumbered and could not control the much larger Lux. (DPFF 46, 56) Lieutenant Vander Steeg requested that backup "step it up" and move faster to his location. (DPFF 51)

As the lone officer facing the aggressive and intoxicated Plaintiffs, Lieutenant Vander Steeg decided that the only way to gain any sort of control over the situation was to get Lux on the ground. (DPFF 53-57) He performed a "hug-yourself" decentralization technique by grabbing hold of Lux's right shoulder with his right hand, and he turned his body to bring Lux down over his right side, which successfully brought Lux to the ground. (DPFF 53-58) However, Lux continued to resist Lieutenant Vander Steeg's attempts to secure his hands behind his back even while on the ground. (DPFF 59-60) The struggle continued as Officer Zens finally arrived as

backup. (DPFF 61) Ultimately the two Officers were able to secure Lux's hands behind his back. (DPFF 61-62)

During this time, Nettles remained within arm's reach of Lieutenant Vander Steeg and Officer Zens, kicking and yelling at them, despite their numerous lawful orders to step back. (DPFF 64-65) Once Lux was placed in handcuffs, Lieutenant Vander Steeg directed Officer Zens to arrest Nettles. (DPFF 66-67) Nettles did not give himself up either, and a second struggle ensued. (DPFF 68-71)

When Officer Zens directed Nettles to put his hands behind his back, he refused and pulled his arm away from Officer Zens. (*Id.*) Officer Zens ordered that he stop resisting. (*Id.*) Nettles did not, and after several failed attempts to gain control of Nettles, Officer Zens attempted a wall stabilization technique. (DPFF 75, 77-79) The wall stabilization was effective, and with the help of two additional officers, Nettles was secured in handcuffs. (DPFF 79)

As a result of their conduct, both Plaintiffs were charged with Disorderly and Objectionable Conduct, Resisting or Obstructing an Officer, and Failing to Obey an Officer. (DPFF 88) Plaintiffs were later found guilty of Disorderly and Objectionable Conduct. (DPFF 89)

On December 14, 2020, Plaintiffs filed the operative Amended Complaint against the named City of Whitewater Officers and Walworth County Sheriff's Deputies under Section 1983. Plaintiffs alleged that the Whitewater Defendants Vander Steeg, Zens, and Stuppy: (1) violated the Equal Protection Clause of the Fourteenth Amendment; (2) used excessive force; (3) made a false arrest; and (4) failed to intervene. (Dkt. 29) Plaintiffs also alleged a *Monell* claim against the City of Whitewater and City of Whitewater Police Chief Aaron Raap. (Dkt. 29, ¶¶ 85-90)

The Whitewater Defendants now move for summary judgment seeking dismissal of all of Plaintiffs' claims, for the reasons set forth in this Memorandum and in the accompanying

3

documents. All relevant facts are set forth in Defendants' Proposed Findings of Fact, filed herewith.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the initial burden to demonstrate that it is entitled to judgment as a matter of law – that no reasonable jury could reach a verdict in favor of the non-moving party. *Celotex*, 477 U.S. at 323; *Matsushita Electronics, Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."). Once this burden is met, the opposing party must go beyond the pleadings and designate the specific facts showing there is a genuine issue. *Anderson v. Liberty Lobby*., 477 U.S. 242 (1986). The mere existence of some alleged factual dispute will not defeat summary judgment. The requirement is there be no genuine issue of material fact. *Id*. at 247-248. Nor will speculation, hearsay or conclusory allegations suffice. *Gorbitz v. Corvilla*, 196 F.3d 879 (7th Cir. 1999).

## ARGUMENT

### I. PLAINTIFFS FAILED TO RESPOND TO DEFENDANTS' REQUEST FOR ADMISSIONS, THUS ALL FACTS STATED THEREIN MUST BE ADMITTED.

On May 28, 2021, Defendants served their First Set of Requests for Admission, Interrogatories, and Second Set of Requests for Production of Documents to Plaintiffs. (DPFF 103) At the time of this filing—over 80 days later—Plaintiffs have not responded to those

4

discovery requests and the Requests for Admissions. (DPFF 104) Thus, the Requests for Admissions are deemed admitted under Fed. R. Civ. P. 36.

Rule 36(a) provides that a party must answer each matter for which an admission is requested <u>within 30 days</u>, or the matter is deemed admitted. *See* Fed. R. Civ. P. 36(a)(3). Admissions made under Rule 36, even default admissions, can serve as the factual predicate for summary judgment. Rule 36(b) provides that a matter admitted is "conclusively established." Fed. R. Civ. P. 36(b). Summary judgment based on those admissions is exclusively provided for under Rule 56. Section (c) of Rule 56 states:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answer to interrogatories, and <u>admissions on file,</u> together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).

Accordingly, all of the facts set forth in Defendants' Requests for Admissions must be deemed admitted.

## II. THE CLAIMS ALLEGED AGAINST OFFICER STUPPY MUST BE DISMISSED FOR LACK OF PERSONAL INVOLVEMENT.

All claims alleged against Officer Stuppy must be dismissed as a matter of law because he was not personally involved in the alleged constitutional violations. Indeed, the Seventh Circuit has made it clear that a defendant cannot be held constitutionally liable if he did not cause or participate in the alleged constitutional violation. *Hildebrandt v. Ill Dep't Nat. Resources*, 347 F.3d 1014, 1039 (7th Cir. 2003). That is, a causal connection between the allegedly unconstitutional conduct and the defendant is necessary to establish liability. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). Plaintiffs cannot circumvent this by simply grouping

all defendants together in the Amended Complaint allegations.  *See Brown v. Illinois Dep't of Pub. Aid*, 318 F. Supp. 2d 696, 700 (N.D. Ill. 2004), *aff'd,* 132 F. App'x 51 (7th Cir. 2005).

Plaintiffs have made such an attempt here by including Officer Stuppy in their claims against the Whitewater Defendants.  However, Officer Stuppy arrived only after the Plaintiffs were arrested, and he had no personal contact with the Plaintiffs.  (DPFF 84-85)  In fact, the only contact he had with anyone at the scene was with the victim Jack Piper, who he interviewed after the Plaintiffs were arrested.  (DPFF 86)

Courts in this circuit has routinely dismissed Section 1983 claims against police officers who, like Officer Stuppy, were not personally involved in the use of force or arrest.  *Outlaw v. Vill. of Shorewood*, No. 19-CV-1092, 2021 WL 424224, at *6 (E.D. Wis. Feb. 8, 2021); *See e.g. Trout v. Frega*, 926 F. Supp. 117, 120-21 (N.D. Ill. 1996) (ruling that "[t]he mere presence of the three officers, without more, does not constitute their requisite § 1983 personal involvement in any constitutional violation which may have occurred"); *see also Smith v. Vill of Hazel Crest*, 2013 WL 182814, at 2 (N.D. Ill. Jan. 17, 2013) (dismissing Plaintiff's excessive force claims for lack of personal involvement because the defendant officer did not exert any force upon the suspect during the arrest).

Therefore, because Officer Stuppy was not present during Plaintiffs' arrests, he must be dismissed for lack of personal involvement.

### III.    PLAINTIFFS' FALSE ARREST CLAIM MUST FAIL.

#### A.    Plaintiffs' False Arrest Claims Are Barred by *Heck v. Humphrey.*

Plaintiffs cannot meet the legal threshold of a false arrest claim because they were convicted of disorderly and objectionable conduct and never appealed the conviction.  (DPFF 89)  Under *Heck v. Humphrey*, courts have long barred false arrest claims where the Plaintiff is

convicted of the underlying crime. 512 U.S. 477, 486–87, 114 S. Ct. 2364, 2372, 129 L. Ed. 2d 383 (1994). In *Heck v. Humphrey*, the Supreme Court ruled that in order for Plaintiffs to recover damages for an allegedly false arrest that would render a conviction invalid, they must prove that the conviction has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. *Id.* A claim for damages bearing that relationship to a conviction that has not been so invalidated is not cognizable under § 1983. *Id.*

The Seventh Circuit has taken *Heck v. Humphrey* one step further, by holding that, "[t]o succeed on a false arrest claim, there must not be a conviction following that arrest." *Tillman v. Conroy*, 12 F.3d 1101 (7th Cir. 1992); *see also King v. Goldsmith*, 897 F.2d 885, 886 (7th Cir. 1990)(ruling that "a conviction bars suit for false arrest . . . based on a claim that there was no probable cause to arrest the plaintiff"). Thus, if the Plaintiffs were convicted, regardless of whether they appealed, there false arrest claim cannot stand. Here, it is undisputed that the Plaintiffs were found guilty of Disorderly and Objectionable conduct, and they have admitted this fact. (DPFF 89)

Therefore, Plaintiffs' claims for false arrest are barred under the *Heck v. Humphrey* doctrine, and the Whitewater Defendants are entitled to summary judgment on this claim.

### B.     The Officers Had Probable Cause to Arrest the Plaintiffs.

The Seventh Circuit has held that the existence of probable cause precludes a Section 1983 claim for false arrest. *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1247 (7th Cir. 1994); *see also Mark v. Furay*, 769 F. 2d 1266, 1268-69 (7th Cir. 1985). Thus, regardless of the undisputed fact that Plaintiffs were convicted of Disorderly and Objectionable Conduct under Whitewater Ordinance

7.36.020.4 (DPFF 88), probable cause existed, because Lieutenant Vander Steeg was an eyewitness to the Plaintiffs' disorderly and objectionable conduct. (DPFF 32)

To determine if probable cause existed, a "court must consider the facts as they reasonably appeared to the arresting officer, seeing what he saw, and hearing what he heard, and so forth." *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 679 (7th Cir. 2007). And an officer "may arrest a person for even the most minor of offenses, such as failing to wear a seatbelt, *Atwater v. City of Lago Vista*, 532 U.S. 318, 354, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001), violating a municipal ordinance regarding the selling of tickets, *Chortek v. City of Milwaukee*, 356 F.3d 740, 745 (7th Cir. 2004), engaging in disorderly conduct, gambling, peddling without a license, failing to stop at a stop sign, or walking a dog without a leash, *Portis v. City of Chi.*, 613 F.3d 702, 703 (7th Cir. 2010)." *Outlaw v. Vill. of Shorewood*, No. 19-CV-1092, 2021 WL 424224, at \*4 (E.D. Wis. Feb. 8, 2021).

At the time of the arrest, Defendants believed that they had probable cause to arrest Plaintiffs for violating Whitewater Ordinances 7.02.010, 7.03.010, 7.36.020.4.

**Whitewater Ordinance 7.02.10 provides:**

7.02.010 – State statutes adopted. Statutory provisions describing and defining resisting or obstructing officer in WSA § 946.41, exclusive of any provisions therein relating to the penalties to be imposed or the punishment of the violation of said statute, are adopted and by reference are made a part of this chapter as if fully set forth herein. Any act required to be performed or prohibited by the statute incorporated herein by reference is required or prohibited by this chapter.

**Wisconsin Statute Section 946.41 provides in part:**

946.41 Resisting or obstructing officer. (1) [W]hoever knowingly resists or obstructs an officer while such officer is doing any act in an official capacity and with lawful authority is guilty of a Class A misdemeanor.

....

8

(2)      In this section:

        (a)      "Obstructs" includes without limitation knowingly giving false information to the officer or knowingly placing physical evidence with intent to mislead the officer in the performance of his or her duty including the service of any summons or civil process.

        (b)      "Officer" means a peace officer or other public officer or public employee having the authority by virtue of the officer's or employee's office or employment to take another into custody.

**Whitewater Ordinance 7.03.010 provides:**

7.03.010 – Failure to obey police officer. No person shall fail or refuse to comply with any lawful order, signal or direction of a police officer.

**Whitewater Ordinance 7.36.020.4 provides in part:**

No person shall, within the limits of the City of Whitewater, commit any of the following offenses:
….

        (4) OBJECTIONABLE CONDUCT. Whoever, in a public or private place, engages in violent, abusive, indecent, profane boisterous, unreasonably loud or otherwise disorderly conduct under circumstances in which the conduct tends to cause or provoke a disturbance is guilty of a violation of this section.

Here, it is undisputed that Lieutenant Vander Steeg was across the street in the Toppers parking lot when he heard the Plaintiffs shouting obscenities at Piper. (DPFF 32) He then observed them push the victim backwards across Freemont Street. (DPF 33) After witnessing these events, Lieutenant Vander Steeg commanded that Plaintiffs walk to him and they ignored his lawful order and walked in the opposite direction. (DPFF 38-40) Because Lieutenant Vander Steeg was an eyewitness to the disorderly and objectionable conduct and Plaintiffs refused to

comply with his lawful order, probable cause for the arrest clearly existed, and the Plaintiffs' false arrest claims must be dismissed.

## IV. PLAINTIFFS' EQUAL PROTECTION CLAIMS MUST BE DISMISSED BECAUSE THERE IS NO EVIDENCE THAT THE OFFICERS WERE "MOTIVATED BY A DISCRIMINATORY PURPOSE."

In their Amended Complaint, Plaintiffs alleged that the Defendants violated their right to equal protection of the laws under the Fourteenth Amendment by unlawfully discriminating against them on the basis of their race when the Officers, among other things, stopped and questioned Plaintiffs without reason, utilized unlawful and excessive force, and unlawfully detained them. (*See* Amended Cmplt. at ¶¶ 45-55)  To survive summary judgment on this claim, Plaintiffs need to provide evidence that Defendants were "motivated by a discriminatory purpose." *See Sow v. Fortville Police Dep't*, 636 F.3d 293, 303 (7th Cir. 2011); *see also Chavez v. Ill. State Police*, 251 F. 3d 612, 635 (7th Cir. 2001).  Plaintiffs cannot provide any evidence that Defendants were motivated by a discriminatory purpose.  At their depositions, Lieutenant Vander Steeg and Officer Zens testified that they did not arrest or use force against the Plaintiffs because of their race.  (DPFF 82)

Defendants anticipate that Plaintiffs will argue that Jack Piper, who is Caucasian, was not arrested, which is evidence of a discriminatory purpose.  However, Plaintiffs would be misguided if they made such an argument, because Piper immediately complied with Lieutenant Vander Steeg's command.  (DPFF 32, 35, 37, 83, 86)  The Plaintiffs, on the other hand, failed to comply with every law enforcement command that they were given. (DPFF 36-81)

Because there is no evidence to support Plaintiffs' equal protection claim against the Defendants, this claim must be dismissed.

## V. THE EXCESSIVE FORCE CLAIMS MUST BE DISMISSED.

### A. Legal Standard.

The force used to effect an arrest must be objectively "reasonable" under the Fourth Amendment. *Abdullahi v. City of Madison*, 423 F.3d 763, 768 (7th Cir. 2005). To determine whether the force used to effect an arrest was reasonable, courts must engage in a "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Morfin v. City of E. Chicago*, 349 F.3d 989, 1004 (7th Cir. 2003); *quoting Tennessee v. Garner*, 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). The amount of force allowed depends on the totality of the circumstances, including, among other things, the severity of the crime at issue, whether the suspect posed a threat to the officers or others, and whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Id*. at 1004–05. The reasonableness standard also recognizes that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 396–97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Courts also recognize that the right to make an arrest carries with it the right to use force, and "not every push or shove, even if it may later seem unnecessary . . . violates the Fourth Amendment." *Id*. As a result, Courts "give considerable leeway to law enforcement officers' assessments about the appropriate use of force in dangerous situations." *Baird v. Renbarger*, 576 F.3d 340, 344 (7th Cir. 2009).

To survive summary judgment on their excessive force claim, Plaintiffs must demonstrate that the Defendant Officers' use of force was unreasonable under the circumstances. *Graham* at 399. Applying these principles to the undisputed facts, it is a necessary conclusion that Lieutenant Vander Steeg's and Officer Zens' actions in attempting to take the intoxicated and aggressive Plaintiffs into custody, were not excessive or unreasonable.

11

### B.    Lieutenant Vander Steeg's and Officer Zens' Uses of Force Were Objectively Reasonable.

As an initial matter, it is undisputed that none of the oOficers knelt on the Plaintiffs, pushed their faces into water puddles, stomped on them, stood on their legs, or shoved them into the squad cars as alleged in the Plaintiffs' Amended Complaint.  (Dkt. 29, ¶ 58)  What the officers did perform were: (1) a hug-yourself decentralization technique to control the actively resisting Lux, in which Lieutenant Vander Steeg grabbed hold of Lux's right shoulder with his right hand, and turned his body to bring Lux down to the ground; and (2) a wall-stabilization technique to control the actively resisting Nettles, in which Officer Zens pushed Nettles up against his squad car. (DPFF 53-55, 75, 81)

There is a litany of cases supporting the Defendant Officers' actions, as the Seventh Circuit has consistently held that control techniques such as the ones used by Lieutenant Vander Steeg and Officer Zens, are reasonable uses of force where a person is actively resisting the arrest.  *See Outlaw v. Vill. of Shorewood*, No. 19-CV-1092, 2021 WL 424224, at *5 (E.D. Wis. Feb. 8, 2021) (ruling that when faced with a person actively resisting arrest and a third party physically aiding that resistance, a "takedown," or "decentralization," was not an unconstitutionally excessive use of force); *citing Diebitz v. Arreola*, 834 F. Supp. 298, 301 (E.D. Wis. 1993); *Carter v. Belz*, No. 12-CV-301-slc, 2013 WL 5701317, at *4, 2013 U.S. Dist. LEXIS 150042, at *6 (W.D. Wis. Oct. 18, 2013); *see, e.g., Barfell v. Romanowicz*, No. 15-C-653, 2016 WL 7350857 at *3, 2016 U.S. Dist. LEXIS 174956 at *9 (E.D. Wis. Dec. 19, 2016) (holding that "[t]he officers properly escalated from a verbal request to comply to a minimum use of force to a takedown and handcuffing."); *Gay v. City of E. Moline*, No. 4:12-cv-04066-SLD-JEH, 2014 WL 2927046 at *3, *10, 2014 U.S. Dist. LEXIS 87566 at *8, *29 (C.D. Ill. June 27, 2014) (holding that the takedown was not excessive force when plaintiff stepped away from the officer and refused to get on the

ground when the officer grabbed hold of him); *Benter v. Jahr*, No. 06-C-128-S, 2007 WL 128332 at *2-3, 2007 U.S. Dist. LEXIS 2418 at *4, *6-8 (W.D. Wis. Jan. 10, 2007) (finding no excessive force when plaintiff refused command to stop, officer "grabbed both of [plaintiff]'s shoulders in an attempt to stop him[,] [plaintiff] refused to stop[, and officer] decentralized plaintiff to the ground"); *Dawson v. Brown*, 803 F.3d 829, 831 (7th Cir. 2015) (holding that it was not excessive for officers to kick and tackle a 72-year-old father who approached officers as they were attempting to arrest his son, who was resisting arrest).

For example, in *Outlaw v. Vill. of Shorewood,* No. 19-CV-1092, 2021 WL 424224, (E.D. Wis. Feb. 8, 2021), Shorewood Police went to plaintiff's home to arrest her for shoplifting. *Outlaw* at 1-2. When the Shorewood officer attempted to grab plaintiff's arm to handcuff her, she pulled away, like Lux and Nettles did. *Id.* There, a similar struggle ensued, and the plaintiff was pinned against a short chain link fence. *Id.* Plaintiff's mother, like Nettles, then walked toward the officer, and demanded that he "stop" and "let her go." *Id.* The mother then "sandwiched" herself between the officer and plaintiff, and she began to pull plaintiff away, resulting in a tug of war for the plaintiff. *Id.* The Shorewood officer responded with a takedown maneuver, and the plaintiff and her mother fell to the ground. *Id.* The Court ruled that "[g]iven the totality of the circumstances, most notably the fact that [plaintiff] (and her mother) physically resisted, each of [the officer's] actions were reasonable under the Fourth Amendment." *Id.* at 5.

A similar conclusion should easily be reached here because the Whitewater Officers were in a more dangerous situation being outnumbered and facing an angry and intoxicated defensive lineman. (DPFF 18, 25, 47) Lux easily overpowered all of the much smaller Lieutenant Vander Steeg's attempts to place his hands behind his back, and the lone Officer had a second assailant approaching from his rear. (DPFF 46, 48) If he did not employ the decentralization technique on

Lux as Lux pulled away from him, he too may have been "laid out on the street." (DPFF 35, 56) The decentralization technique allowed him to gain some control over the scene and decreased the chance of Nettles being able to strike from behind. Notably, the resistance did not end there, but with the help of an additional officer Lux was finally placed in custody. (DPFF 59-62) The use of force was reasonable and necessary given the circumstances.

Similarly, Nettles physically resisted Officer Zens when he went to place him under arrest. (DPFF 66-71) Nettles, like the plaintiff in *Outlaw*, pulled his arm away. (DPFF 69) Due to Nettles' physical resistance, Officer Zens performed a stabilization technique to keep Nettles from moving. (DPFF 75) This technique, along with the help from two other officers, enabled them to place Nettles into handcuffs. (DPFF 79)

Because both Plaintiffs physically resisted the Officers, the Officers' use of force in employing control techniques to get them in handcuffs was reasonable under the circumstances. Thus, this Court should dismiss Plaintiffs' use of force claims.

## VI. PLAINTIFFS' FAILURE TO INTERVENE CLAIMS MUST FAIL.

Plaintiffs claimed that Lieutenant Vander Steeg, Officer Zens, and Officer Stuppy failed to take reasonable steps to prevent each other from inflicting harm on the Plaintiffs. However, as shown above, the Whitewater Officers did not have a duty to intervene because no constitutional violation had been committed. *See Outlaw* at 6 (holding that because the use of force was not excessive, defendants could not be liable for having not intervened). Plaintiffs' failure to intervene claim, therefore, cannot stand as a matter of law.

Further, *Yang v. Hardin*, 37 F.3d 282 (7th Cir. 1994), held that "[a]n officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under §1983 <u>if that officer had reason to know</u>: (1) that excessive force

was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; and the officer had a realistic opportunity to intervene to prevent harm from occurring. *Anderson*, 17 F.3d at 556; *accord Byrd v. Clark*, 783 F.2d at 1006-07." *Id.* at 285 (emphasis added).

Here, Plaintiffs were legally arrested after physically assaulting Piper, failing to obey lawful orders, and resisting and obstructing the Officers' attempts to arrest them. (DPFF 32-80) Lieutenant Vander Steeg and Officer Zens enlisted reasonable uses of force, the control techniques, to gain control over the resisting Plaintiffs. (*Id.*) As shown above, the law clearly provides that control techniques are reasonable uses of force where an officer is faced with an actively resisting suspect. *See Outlaw* at 5 (ruling that when faced with a person actively resisting arrest and a third party physically aiding that resistance, a "takedown," or "decentralization," was not an unconstitutionally excessive use of force).

Thus, Plaintiffs cannot maintain a failure to intervene claim against the Whitewater Defendants because they did not have a duty to intervene, much less a reason to know that a constitutional violation had occurred.

## VII. THE WHITEWATER OFFICERS ARE ENTITILED TO QUALIFIED IMMUNITY.

### A. Legal Standard.

It is well settled that police officers sued under 42 U.S.C. § 1983 are entitled to qualified immunity "when they act in a manner that they reasonably believe to be lawful." *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009); *see Pearson v. Callahan*, 555 U.S. 223, 244, 129 S. Ct. 808, 823, 172 L. Ed. 2d 565 (2009). The doctrine allows "ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (internal quotation marks omitted). Qualified

15

immunity "erects a substantial barrier for plaintiffs, and appropriately so because qualified immunity is designed to shield from civil liability all but the plainly incompetent or those who knowingly violate the law." *Kernats v. O'Sullivan*, 35 F.3d 1171, 1177 (7th Cir. 1994).

In order to defeat a properly raised qualified immunity defense, the plaintiff must establish two things: *first*, the undisputed facts establish an underlying constitutional violation; and *second*, the constitutional right at issue was "clearly established" with the requisite level of specificity at the time of the defendant's alleged misconduct." *Mordi v. Zeigler*, 770 F.3d 1161, 1164 (7th Cir. 2014). In the context of actions taken during a stop or arrest, police officers are entitled to qualified immunity "'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Rice v. Burks*, 999 F.2d 1172, 1174 (7th Cir. 1993); *quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1983).

Plaintiffs cannot make this showing because they cannot demonstrate that the Whitewater Officers violated any clearly established right.

### B. The Whitewater Officers are Entitled to Qualified Immunity on Plaintiffs' Claims.

First, Officer Stuppy is entitled to qualified immunity because there is no clearly established law holding a police officer constitutionally liable when he was not personally involved in the alleged constitutional violation. Rather, as noted above, case law makes it clear that a lack of personal involvement requires dismissal of all Section 1983 claims against Officer Stuppy. *See Trout v. Frega*, 926 F. Supp. 117, 120-21 (N.D. Ill. 1996) (ruling that "[t]he mere presence of the three officers, without more, does not constitute their requisite § 1983 personal involvement in any constitutional violation which may have occurred"); *see also Smith v. Vill of Hazel Crest*, 2013 WL 182814, at 2 (N.D. Ill. Jan. 17, 2013) (dismissing Plaintiff's excessive force claims for lack of personal involvement because the defendant officer did not exert any

16

force upon the suspect during the arrest).  Thus, Officer Stuppy is entitled to qualified immunity against Plaintiffs' claims.

Second, the Seventh Circuit and other courts have made it clear "that an officer is entitled to [qualified] immunity for a takedown that enables the officer to control a suspect during an arrest," and that "only when precedent places the invalidity of particular action beyond debate may damages be awarded." *Johnson v. Rogers*, 944 F.3d 966, 969 (7th Cir. 2019); *see City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 504, 202 L. Ed. 2d 455 (2019); *see, e.g., Kelsay v. Ernst*, 933 F.3d 975 (8th Cir. 2019) (qualified immunity for a bear-hug takedown when an angry suspect walked away from the officer for the second time); *Shafer v. Santa Barbara*, 868 F.3d 1110 (9th Cir. 2017) (qualified immunity for a leg-sweep takedown when the intoxicated suspect tried to pull away); *Hedgpeth v. Rahim*, 893 F.3d 802 (D.C. Cir. 2018) (qualified immunity for an arm takedown accompanied by a knee to the rear of the leg of a suspect who had pulled his hands away from the cuffing procedure).  As noted throughout this Memorandum, Lieutenant Vander Steeg and Officer Zens had to enlist control techniques, the hug-yourself decentralization technique and wall stabilization technique, to gain control over the resisting Plaintiffs.  (DPFF 53-57, 75-81)  The law recognizes this as a reasonable use of force where the suspect is resisting the arrest.

Therefore, the Defendant Officers are entitled to qualified immunity on Plaintiffs' excessive force claims.

### VIII.   THE MONELL CLAIM MUST BE DIMSISSED.

#### A.      Plaintiffs Cannot Establish a Constitutional Violation.

Plaintiffs' *Monell* claim must be dismissed because Plaintiffs cannot establish a constitutional violation.  The Seventh Circuit has held that to maintain a 42 U.S.C. § 1983 claim against a municipality, a plaintiff must first establish a constitutional violation.  *See Outlaw* at 6;

*see also Thompson v.* Boggs, 33 F.3d 847, 859 (7th Cir. 1994); *see also City of L.A v. Heller*, 475 U.S. 796, 799, 106 S. Ct. 1571, 89 L.Ed.2d 806 (1986) (ruling that if a person has suffered no constitutional injury at the hands of an official, the fact that the departmental regulations might have authorized unconstitutional conduct is beside the point). As shown in this Memorandum, no constitutional violation occurred, and Plaintiffs lack any claim against the City of Whitewater. As such, Plaintiffs cannot make a *Monell* claim against the City of Whitewater and their *Monell* claim must be dismissed.

### B. There Was No Constitutional Violation Caused By an "Official Municipal Policy."

Even if Plaintiffs could prove a constitutional violation, the municipality would only be held liable if the violation was caused by an "official municipal policy." *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 692 (1978). To state a *Monell* claim against a municipality, the complaint must allege that the constitutional deprivation was caused by an official municipal policy, custom, or practice. *Oklahoma City v. Tuttle*, 471 U.S. 808, 810, 105 S.Ct. 2427, 2429, 85 L.Ed.2d 791, 796 (1985); *Monell v. Dept. of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611, 638 (1978); *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1237 (7th Cir. 1986). "To establish a municipal policy or custom, the plaintiff must allege a specific pattern or series of incidents that support the general allegation of a custom or policy." *Henry*, 808 F.2d at 1237. A single incident, when unaccompanied by supporting history, does not provide an adequate basis for inferring a policy. *McKee v. City of Rockwell*, 877 F.2d 409, 416 (5th Cir. 1989).

Furthermore, Plaintiffs must show a "direct causal link between the municipal policy and the constitutional deprivation." *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 509-10

18

(7th Cir. 1993). "[F]ailing to eliminate a practice cannot be equated to approving it." *Wilson v. City of Chicago*, 6 F.3d 1233, 1240 (7th Cir. 1993), *as modified on denial of reh'g* (Dec. 8, 1993).

In the absence of a formal policy, Plaintiffs must rely on *Monell's* custom or practice prong to establish a basis for municipal liability. A municipal "custom" may be established by proof of the knowledge of policy-making officials and their acquiescence in the established practice. *See Fletcher v. O'Donnell*, 867 F.2d 791, 793–94 (3d Cir. 1989).

Plaintiffs' Amended Complaint raised the following *Monell* claims against City of Whitewater Police Chief Aaron Raap and the City of Whitewater: 1) that the acts of the individual Defendants were done in accordance with the City of Whitewater's de-facto policy, regulation, decision or custom condoning excessive force in executing arrests, false arrests, and/or otherwise violating a person's equal protection rights; and (2) that the City of Whitewater and Chief Raap failed to adequately train, supervise, or discipline the Officers. (Dkt. 29, ¶¶ 85-90)

Here, there is no evidence or allegation of a specific pattern or series of incidents that support Plaintiffs' general allegations of a custom or policy tolerating excessive uses of force, discrimination, and false arrests. Simply put, Plaintiffs' general allegation that they were harmed in accordance with a de facto policy is not enough: *Monell* requires supporting history.

Further, and contrary to Plaintiffs' allegations, the City of Whitewater actually has express written policies which every officer must follow that prohibit police officers from making false arrests, discriminating, and using excessive force. (DPFF 92-98) The City of Whitewater Police Department also reviews and evaluates those policies every two to three years and there has been no reason for the City to believe that the policies were inadequate or inconsistent with the law. (DPFF 92-97) Thus, Plaintiffs cannot claim that the City of Whitewater had a policy of tolerating the alleged constitutional violations, because it has specific policies prohibiting them.

19

### C. Plaintiffs Cannot Prove a Series of Incidents Amounting to an Unconstitutional Practice so Known and Permanent as to Constitute a Custom.

Additionally, there is also no evidence that the City of Whitewater had a "custom or usage" of condoning the alleged constitutional violations. *See Monell* at 692. In the absence of a formal policy, which the City has, Plaintiffs must rely on *Monell's* custom or practice prong to establish a basis for municipal liability. *Monell* authorizes the imposition of liability against a municipal entity "for constitutional deprivations visited pursuant to governmental 'custom' even though such custom has not received formal approval through the government's official decision-making channels." *Id.* at 690-91; *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–83, 106 S. Ct. 1292, 1299–300, 89 L. Ed. 2d 452 (1986). The Seventh Circuit explained in *Cornfield v. Consolidated High School Dist. No. 230*, that "a practice of unconstitutional conduct, although lacking formal approval, may provide a basis for municipal liability" if the plaintiff can establish that the policy-making authority acquiesced in a pattern of unconstitutional conduct. 991 F.2d at 1326 (7th Cir. 1993); *see also Felton v. Board of Commissioners*, 5 F.3d 198, 203 (7th Cir. 1993). A municipal "custom" may be established by proof of the knowledge of policy-making officials and their acquiescence in the established practice. *See Fletcher v. O'Donnell*, 867 F.2d 791, 793-794 (3d Cir. 1989). Under the stringent custom standard, Plaintiffs must show that "policymakers were deliberately indifferent as to the known or obvious consequence." *Thomas v. Cook Cnty. Sheriff's Dept.*, 604 F.3d 293 (7th Cir. 2009).

Plaintiffs cannot put forth any evidence that supports a known and permanent custom of discriminating based on race, arresting individuals without probable cause, or using excessive force. However, even if Plaintiffs did have evidence of an unlawful and pervasive practice; Plaintiffs cannot prove that the City of Whitewater policymakers were aware of this practice and acted deliberately indifferent to that practice. Therefore, Plaintiffs' *Monell* claim must fail.

20

### C.     There is no Evidence that the City of Whitewater failed to Adequately Train, Supervise, and Discipline its Police Officers.

In resolving the issue of a city's liability regarding training its police officers, the focus must be on the adequacy of the training program in relation to the task the particular officers must perform.  *City of Canton v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197, 1294, 106 L. Ed.2d 412, 426 (1989).  In fact, for liability to attach in this circumstance, the identified deficiency in a city's training program must be closely related to the ultimate injury.  *Id*. at 391.  "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program."  *Id*. at 390-91.  The inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.  *Id*. at 388.  To show deliberate indifference, Plaintiffs must prove that (1) the City of Whitewater had actual or constructive notice that a particular defect in training existed and caused the violation; and (2) that the City of Whitewater disregarded such notice and retained the defective training program.  *See Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 410, 117 S. Ct. 1382, 1391, 137 L. Ed. 2d 626 (1997).

Furthermore, the Seventh Circuit has long held that where a municipality has complied with the state-mandated training requirements, a *Monell* claim for inadequate training cannot stand.  *See Tapia v. City of Greenwood*, 965 F.2d 336 (7th Cir. 1992).  For example, in *Tapia*, Plaintiff brought a lawsuit against police officers, and the municipality which employed them, alleging § 1983 violations.  *Id.* at 337.  However, defendants demonstrated that the officers received training at their police academy, relative to conducting warrantless searches of homes.  *Id.* at 339.  The defendant municipality also illustrated that it adhered to minimum state standards for training police officers under state law.  *Id.*  The Seventh Circuit Court of Appeals held that

the plaintiff failed to show that the defendant municipality was deliberately indifferent regarding its training of officers regarding conducting warrantless searches, because the police officers had received training on the conducting of warrantless searches that complied with minimum state training requirements. *Id.*

Here, there is ample evidence that the City of Whitewater had an adequate training program for its officers that exceeded the law enforcement training requirements established in Wis. Stats. § 165.85. For instance, like *Tapia*, all new prospects were required to complete an approved police academy training program before starting their employment with the City of Whitewater Police Department. (DPFF 90-91) During that training program, the new prospects received training on several items, including but not limited to, DAAT, investigations, discriminatory enforcement, making arrests, officer/subject factors, and use of force. (DPFF 91)

The training and requirements did not stop there. Once the sworn officer completed the police academy, new officers were provided with a copy of the City of Whitewater written policies and procedures, which each officer is required to understand and sign. (DPFF 92) In addition, all new hires had to go through a twelve-week field training program where they received more training from experienced police officers on several police practices, including but not limited to, DAAT, investigations, making arrests, officer/subject factors, and use of force. (DPFF 99) Officers also had to complete various training throughout the year, with unified task instructors. (DPFF 100-102)

Nevertheless, even if the training requirements were deficient; the City of Whitewater and Chief Rapp did not have reason to know that the training program was deficient. *See Connick v. Thompson*, 563 U.S. 51, 61 (2011) (ruling that plaintiff must prove that the policymakers had

actual or constructive notice that persistent failure to train, supervise, or discipline will cause constitutional violations).

There is also no evidence that the City of Whitewater had an unconstitutional practice regarding how it supervised or disciplined its police officers or that the City of Whitewater policymakers had prior notice of any such deficiency. Thus, because Plaintiffs cannot put forth any evidence showing that the City of Whitewater policymakers had prior notice of their alleged deficiencies, their *Monell* claim must be dismissed.

## IX. PLAINTIFFS' PUNITIVE DAMAGES CLAIM MUST BE DISMISSED.

Plaintiffs' Amended Complaint requests an award of punitive damages against the individual defendants. However, there is no evidence to support a claim for punitive damages as none of the Whitewater Officers actions were motivated by evil intent.

In order to award punitive damages against the Defendants, a jury would have to find that their conduct was "motivated by evil motive or intent or [that] it involve[d] reckless or callous indifference to the federally protected rights of others." *Soderbeck v. Burnett County*, 752 F. 2d 285, 290 (7th Cir. 1985); *citing Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640 (1983). Here, there is no evidence that any of the Defendants acted with evil motive or intent, or with callous indifference to Plaintiffs protected rights. In fact, the Defendants actions show the exact opposite.

When responding to first fight between the Plaintiffs and an unknown victim, the Defendants attempted to calm Plaintiffs down. (DPFF 13-31) After making sure that the Plaintiffs were okay, the Defendant Officers told Plaintiffs to give them a call if anyone else tried to fight them. (*Id.*) Moreover, when Lieutenant Vander Steeg noticed Plaintiffs pushing Piper across Freemont Street, he asked all three males to come to him before attempting to arrest them. (DPFF 36) Only after the Plaintiffs refused to listen to his commands, and further resisted his arrest, did

any use of force come into play.  (DPFF 36-80)  Further, the Defendant Officers' uses of force mirrored the increase in resistance by the Plaintiffs.

Thus, Plaintiffs' punitive damages claim must be dismissed because the Whitewater Officers did not act with evil intent or reckless disregard to the Plaintiffs' constitutional rights.

### CONCLUSION

For the reasons stated above, the Whitewater Defendants respectfully request that the Court grant their Motion for Summary Judgment and dismiss all claims alleged against them.

Dated this 24th day of August 2021.

**GUNTA LAW OFFICES, S.C.**
**Attorneys for Defendants, City of Whitewater,**
**Aaron Raap, Adam Vander Steeg, Mike Zens**
**and Justin Stuppy**

By:      */s/ Kyle R. Moore*
          Gregg J. Gunta WI State Bar No.  1004322
          Ann C. Wirth WI State Bar No. 1002469
          Jasmyne M. Baynard WI State Bar No. 1099898
          Kyle R. Moore WI State Bar No. 1101745
          9898 West Bluemound Road, Suite 2
          Wauwatosa, Wisconsin 53226
          T: (414) 291-7979  /  F: (414) 291-7960
          Email:  gjg@guntalaw.com
                   acw@guntalaw.com
                   jmb@guntalaw.com
                   krm@guntalaw.com