UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

DANGELO SHAUN LUX, *et al.*,
    Plaintiffs,
  v.
CITY OF WHITEWATER, et al.,
    Defendants.

Case No: 20-CV-01057

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS CITY OF WHITEWATER, AARON RAAP, ADAM VANDER STEEG, MIKE ZENS, AND JUSTIN STUPPY'S MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Dangelo Shaun Lux and Lorenzo Nettles (the "Plaintiffs") by their attorneys, Judge Lang & Katers, LLC, submit this brief in opposition to the Defendants City of Whitewater, Aaron Raap, Adam Vander Steeg, Mike Zens, and Justin Stuppy's[1] (the "Whitewater Defendants")[2] Motion for Summary Judgment. (D. 40).

## INTRODUCTION

On September 20, 2018, while Dangelo Lux ("Lux") and Lorenzo Nettles ("Nettles") were walking back to Lux's home, they began talking with a friend and teammate of Lux's, Jack Piper ("Piper"). (Plaintiffs' Proposed Findings of Fact ("PPFOF"), ¶¶17-24). While the students were talking, Whitewater Police Office, Lieutenant Vander Steeg approached the Plaintiffs in his squad car. Vander Steeg's lights were not on, and it was raining that night. (PPFOF, ¶¶25-26). Vander Steeg was originally stationed in a Toppers parking lot, and it took him over a minute driving to

---

[1] After careful review of all available discovery and pleadings in this matter, the Plaintiffs concede dismissal of Officer Justin Stuppy and Aaron Raap is appropriate. Plaintiffs do not challenge Justin Stuppy or Aaron Raap's dismissal on Summary Judgment.

[2] After careful review of all available discovery and pleadings in this matter, the Plaintiffs concede dismissal of their Equal Protection Claims, False Arrest Claims, and *Monell* Claims. Plaintiffs do not challenge dismissal of these three claims against the Whitewater Defendants.

reach the Piper, Lux and Nettles. (PPFOF, ¶¶25-29). As the students were not doing anything illegal at the time Vander Steeg approached them, they began to walk away towards their home as instructed earlier in the night by Whitewater police. (PPFOF, ¶¶14-16,23, 30). At no point in their conversation with Piper did Lux or Nettles raise their voice, yell, or physically touch Piper. They were simply walking home. (PPFOF, ¶¶18-22).

As Lux and Nettles walked away, assuming they would be told to disperse, Vander Steeg got out of his squad car and started yelling at them to "get over here." (PPFOF, ¶¶30-33). As Lux had done nothing illegal, he continued walking for 4-6 steps before stopping with his hands in the air. (PPFOF, ¶¶34-37). Vander Steeg ran past Piper towards Lux. (PPFOF, ¶35). As Vander Steeg quickly approached Lux, Vander Steeg told Lux to put his hands behind his back. Lux complied by making his hands visible and holding them behind his head. (PPFOF, ¶36). When Lux turned around Vander Steeg was right next to Lux. (PPFOF, ¶37-38). Vander Steeg grabbed Lux's hands which were behind his head and tried to forcefully lower them behind Lux's back. (PPFOF, ¶¶38-39). Lux was confused as to why he was being grabbed by Vander Steeg. (PPFOF, ¶39).

At no point did Lux resist, pull his arms away or fail to comply while Vander Steeg was grabbing Lux. (PPFOF, ¶43). Lux had no idea why he was being grabbed by the officer. (PPFOF, ¶39). Vander Steeg was able to twist Lux's arms behind his back. (PPFOF, ¶38). Vander Steeg while grabbing Lux threatened to taser him. (PPFOF, ¶41). Lux was not resisting and only replied that "I wasn't doing anything." (PPFOF, ¶39). Despite Lux not resisting, and Vander Steeg having full control over his arms, Vander Steeg threw Lux over Vander Steeg's hip and slammed Lux into the street. (PPFOF, ¶¶45-52). Lux landed forcefully on his face, chest and stomach. (PPFOF, ¶¶45-52). While on the ground Vander Steeg continued to maintain control of Lux's arms. (PPFOF, ¶53). With Vander Steeg on top of Lux, Lux was face down in a puddle next to the street

2

curb. (PPFOF, ¶¶53). Lux had difficulty breathing and struggled to keep his mouth and nose out of the puddle and accumulating rainwater. (PPFOF, ¶¶53, 56).

At this time, Nettles was approximately four steps away and did not come any closer to Vander Steeg or Lux. (PPFOF, ¶42). At this time, Vander Steeg called for backup. (PPFOF, ¶44). From the time Vander Steeg grabbed Lux until he slammed Lux into the street, Lux never resisted or attempted to break away from Vander Steeg. (PPFOF, ¶¶37-50). Lux would remain on the ground, struggling to breathe with his face in a puddle for approximately ten minutes. (PPFOF, ¶55).

Nettles pleaded with Vander Steeg that they were not doing anything wrong. Officer Mike Zens arrived shortly after Vander Steeg slammed Lux into the street. (PPFOF, ¶¶58-60). Nettles was concerned Lux's face was in water and he couldn't breathe. (PPFOF, ¶¶58-61). Nettles took out his phone to record the excessive force that was being used against Lux. (PPFOF, ¶¶58-61). One of the officers' saw Nettles recording their abuse and yelled, "phone, phone." (PPFOF, ¶62). Officer Zens after briefly ensuring that Lux was controlled, approached Nettles. (PPFOF, ¶¶58-64). Nettles placed his hands behind his back and Zens grabbed him. (PPFOF, ¶¶64-67). At no point did Nettles, resist, attempt to pull away or struggle. (PPFOF, ¶¶64-67). Officer Zens forced Nettles over by a squad car then slammed Nettles' face into the police squad car. (PPFOF, ¶¶68-71). The force used to slam Nettles' head into the squad car was so great that one of Nettles front teeth was chipped in half. (PPFOF, ¶¶68-71). Nettles was not resisting when three officers slammed him into the police car. (PPFOF, ¶70). After this use of force, the officers handcuffed Nettles and placed him in the squad car. (PPFOF, ¶71). After approximately of ten minutes of Lux struggling to keep his nose and mouth out of the puddle near the curb, Vander Steeg and Deputy Johnson eventually lifted him off the ground and placed him into a squad car. (PPFOF, ¶75).

3

All relevant facts are set forth in the Plaintiffs' Proposed Findings of Fact, and Responses to Defendants' Proposed finding of fact, filed herewith.

## SUMMARY JUDGMENT STANDARD

Summary judgment is only proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The court's role when deciding a motion for summary judgment is not to evaluate evidence or determine the truth of the matter at issue, but only to determine whether there is genuine issue of fact. *Moore v. Ford Motor Co.*, 901 F.Supp. 1293, 1296 (N.D.Ill. 1995). Evidence presented by the responding party supported by affidavits or other evidentiary material is to be taken as true. *Uskaw v. Blemker*, 548 F. 2d 673 (7th Cir. 1976). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. CO. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If the factfinder could reasonably find in the nonmovant's favor, then summary judgment is improper. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1968).

Trial courts are repeatedly cautioned that summary judgment should be denied if, viewing the evidence in a light most favorable to the party against whom the motion is directed, there is any doubt that a genuine issue of material facts exists. See 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure, § 2727 (1983). Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." *Anderson*, 477 U.S. at 255.

Further, Federal Rule of Civil Procedure 56 provides that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the

4

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. The Court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). The Court must not weigh the evidence presented or determine credibility of witnesses; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chicago Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010). The party opposing summary judgment "need not match the movant witness for witness, nor persuade the [C]ourt that [his] case is convincing, [he] need only come forward with appropriate evidence demonstrating that there is a pending dispute of material fact." *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 921 (7th Cir. 1994).

As set forth below and detailed in Plaintiffs' (PPFOF), as well as Plaintiffs' Responses to Defendants Proposed Findings of Fact, there is overwhelming evidence from which a reasonable trier of fact could conclude that Vander Steeg and Zens used excessive force against Lux and Nettles and additionally failed to intervene to stop these constitutional violations from occurring. At the very least, there are disputes of material fact that preclude a finding for summary judgment against Vander Steeg and Zens on the excessive force and failure to intervene claims.

## ARGUMENT

### I. VANDER STEEG'S USE OF EXCESSIVE FORCE VIOLATED LUX'S CONSTITUTIONAL RIGHTS UNDER THE FOURTH AMENDMENT

A claim that a law enforcement officer used excessive force is analyzed under the Fourth Amendment's objective reasonableness standard. *Avina v. Bohlen*, 882 F.3d 674, 678 (7th Cir. 2018) (citing *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 861 (7th Cir. 2010). "Whether a police

5

officer used excessive force is analyzed from the perspective of a reasonable officer under the circumstances, rather than examining the officer's actions in hindsight." *Id*. (quoting *Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015). The reasonableness of an officer's actions must be determined by examining the "specific circumstances of the arrest, including 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Cyrus*, 624 F.3d at 861–62 (quoting *Graham v. Connor*, 490 U.S. 386, 396, (1989)). "[S]ummary judgment is often inappropriate in excessive-force cases because the evidence surrounding the officer's use of force is often susceptible of different interpretations." *Id*. at 862.

Here, Vander Steeg stated that he approached Lux, Nettles, and Piper because he saw them pushing each other and yelling. This is directly contradicted by Lux, Nettles, and Piper who stated no pushing or aggressiveness ever occurred. (PPFOF, ¶¶17-24). Piper even gave a statement to Vander Steeg stating that he was not disturbed by Lux and Nettles' actions and that he is friends and teammates with Lux. (PPFOF, ¶¶24).

Video from Vander Steeg's body camera shows that Lux walked for approximately four to six steps after Vander Steeg told him to "get over here." (PPFOF, ¶¶32-34). Lux was essentially arrested because he failed to go over to Vander Steeg immediately. However, Lux did immediately place his hands behind his head when Vander Steeg approached him. (PPFOF, ¶31). After the initial few steps, Lux stopped walking as instructed. (PPFOF, ¶36-37). Vander Steeg kept yelling at him to place his arms behind his back. While Lux's hands were initially behind his head, Vander Steeg's body camera shows that Lux's arms were behind back before the camera is shut off. (PPFOF, ¶43-45). Conveniently for the Defendants, Vander Steeg's body camera shut off right before he slammed Lux into the street and forced Lux's face into a puddle next to the curb.

(PPFOF, ¶46).  While Lux may not have complied immediately with Vander Steeg's order to come over by him, Lux stopped walking and immediately placed his hands behind his head, then Vander Steeg's moved Lux's arms behind his back. Vander Steeg then slammed Lux into the ground despite Lux not resisting or attempting to flee. (PPFOF, ¶47). Lux's face, stomach, and chest made direct contact with the street as a result of Vander Steeg's body slam. (PPFOF, ¶48).  The next available body camera footage shows Lux visibly bleeding with his face in a puddle of pooling water. (PPFOF, ¶72-73). Further, Vander Steeg is seen occasionally rolling Lux's face further into the puddle. (PPFOF, ¶75). Vander Steeg's limited body camera footage aligns with Lux and Nettles' Declaration statements. Lux and Nettles have asserted based on personal knowledge and under penalty of perjury that Lux was not resisting when Vander Steeg slammed Lux into the street.

Here, Lux was initially noncompliant when he walked a few steps away from Vander Steeg. The seriousness of this crime is minimal. Lux eventually cooperated and stopped walking. (PPFOF ¶36). He put his hands behind his head and Vander Steeg grabbed him. (PPFOF ¶38). Lux and Nettles assert that Lux was not struggling or resisting at this time. Would a reasonable officer under these circumstances then slam a non-resistant suspect onto the street and keep him in a puddle for ten minutes?  *Cyrus*, 624 F.3d at 861–62. A jury making all reasonable inferences in Lux and Nettles favor could easily determine that Vander Steeg used excessive force that a reasonable officer under the same circumstances would not have used.

At the very least there is a dispute of material fact as to whether Lux was actively resisting when Vander Steeg slammed Lux into the street. The Defendants assert, "Lux easily overpowered all of the much smaller Lieutenant Vander Steeg's attempts to place his hands behind his back, and the lone Officer had a second assailant approaching from his rear." (DPFF 46, 48). This is

7

directly disputed by Lux and Nettles assertions that Lux was not resisting, did not attempt to resist or struggle before Vander Steeg tossed Lux over his hip and slammed Lux into the street face first. (PPFOF, ¶¶36-51). Nettles did not step closer to Vander Steeg as directed. (PPFOF ¶40). Further, the Defendants inappropriately characterize Lux as being an "angry" "intoxicated defensive lineman." (D. 57, p. 12). That is not what Vander Steeg's body camera footage shows. The video shows a confused University of Whitewater student being grabbed by an aggressive officer and even complying with the officer's commands before the body camera footage shuts off, moments before Lux is slammed face first into the street. (PPFOF ¶39). Lux and Nettles have asserted that Lux was not resisting when Vander Steeg, unprompted and unreasonably slammed Lux into the ground face first and forced him to remain face down in a puddle.

These disputes of fact create credibility determination that can only be resolved by a jury. "Credibility determination[s] may not be resolved at summary judgment." *Deets v. Massman Const. Co.*, 811 F.3d 978, 982 (7th Cir. 2016). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. . . ." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 255 (1986).

The combined video footage from officer body cameras does not show a single act of resistance by either Lux or Nettles apart from their initial few steps away from Vander Steeg. See Lang Aff., ¶3-6, Exhibits A-D. Lux and Nettles have asserted that Lux was not resisting when Vander Steeg slammed Lux into the street and kept him there for ten minutes in a puddle of water. (PPFOF, ¶¶36-51). Lux did not attempt to roll out of the puddle out of fear that Vander Steeg would further injure him. (PPFOF, ¶74). There is clearly a dispute of material fact regarding whether Lux and Nettles were actively resisting and the last seconds of footage on Vander Steeg's

8

body camera before it shuts off are of Lux's arms behind his back in compliance with Vander Steeg's orders. (PPFOF, ¶¶36-51).

Minutes after Lux was taken down, video footage from Walworth Deputy Johnson shows that Lux's face was still down in the street gutter with a stream of water constantly flowing before the officers finally lift him up. (PPFOF, ¶77). The question of whether Lux was actively resisting is a material fact that is clearly disputed. As Lux and Nettles state, Lux was not resisting. Under Lux and Nettles asserted facts, a reasonable officer who had control of a suspect, who is not resisting, would not escalate the situation and slam a cooperating suspect into the street or force them to remain face down in puddle of water. It is clearly established that "significant force is unreasonable after a suspect has stopped resisting." *Alicea v. Thomas*, 815 F.3d 283, 288 89 (7th Cir. 2016); *see also Johnson v. Rogers*, 944 F.3d 966, 969-70 (7th Cir. 2019); *Miller v. Gonzalez*, 761 F.3d at 829 (7th Cir. 2014); *Morfin v. City of East Chicago*, 349 F.3d 989, 1005 (7th Cir. 2003). After Lux's initial few steps away from Vander Steeg, he stopped and had his hands behind his head. Lux did not pose a threat to officer Vander Steeg or anyone else around him. When Lux stopped walking away any resistance also stopped.

The only support the Defendants cite to are cases where a "takedown," or "decentralization" technique are used to control a person who is actively resisting an arrest. (D. 41, p. 12). Lux was not resisting when Vander Steeg slammed him into the ground and Lux was not resisting while he was face down on the ground in a puddle. (PPFOF, ¶¶36-51). The facts of this case are distinguishable from every case cited by the Defendants. Without resistance, the use of significant force is unconstitutional. *Alicea*, 815 F.3d 283, 289.

Slamming person into the ground and keeping their head in a puddle of water for approximately 10 minutes is unquestionably a use of significant force. The parties dispute as to

9

whether Lux was resisting at the time Vander Steeg slammed Lux into the ground and kept him in a position where Lux struggled to breathe. Here, all justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to Lux and Nettles at the summary judgment stage. *Matsushita Elec. Indus. CO. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Based on the video footage, and Lux and Nettles Declaration statements, a factfinder could reasonably find that Vander Steeg used excessive force when he slammed Lux into the ground and kept him in a puddle, struggling to breathe for ten minutes. A jury will be free to weigh the credibility of the parties, the video footage and resolve material disputes of fact as the law intends. Vander Steeg's summary judgment motion regarding the excessive force claims must be denied.

## II. OFFICER ZENS' USE OF EXCESSIVE FORCE VIOLATED NETTLE'S CONSTITUTIONAL RIGHTS UNDER FOURTH AMENDMENT

Following same analysis as applied in Section I, Officer Zens request for dismissal of Nettles' excessive force claims must be denied. As stated by Nettles, Lux, and Piper, they were not doing anything illegal when first approached by Vander Steeg. (PPFOF, ¶¶17-24). While Lux and Nettles did slowly walk away from Vander Steeg they stopped after 4-6 steps, Nettles did not touch or attempt to intervene when Vander Steeg took control of Lux. (PPFOF, ¶¶34-40). After Vander Steeg threw Lux on the ground, Nettles did not come closer, did not touch them or try to intervene. (PPFOF, ¶¶42). Nettles was worried that Lux was going to drown has his face was directly in a puddle. (PPFOF, ¶58).

As officer Zens arrived on the scene, Nettles did not kick or attempt to intervene as Zens approached Lux who was still face down in the street. (PPFOF, ¶¶61, 64). Nettles out of fear that Lux could not breathe, attempted to record the interaction with his phone. (PPFOF, ¶¶61). Either Zens or Vander Steeg yelled, "phone, phone" before Zens approached Nettles. (PPFOF, ¶¶62). Officer Zens did not have his body camera when he arrived on the scene. (PPFOF, ¶¶60). Zens

10

and Nettles offer disputing account of what occurred next. Nettles has stated that he complied with Zens' request to put his arms behind his back and did not resist. (PPFOF, ¶¶61-66). Zens then grabbed Nettles, had control over his arms behind his back and brought him over to the squad car. (PPFOF, ¶¶66-67).

Officer Johnson arrived on the scene as Zens and Nettles were standing over by the squad car. (PPFOF, ¶¶82-83). Johnson's body camera shows that Nettles did not make any quick or sudden moves and shows Zens slamming Nettles into the squad car. (PPFOF, ¶¶70-72). The video shows that Nettles may have tried to slowly step out of the gutter, that had over an inch of water, and back on to the curb. (PPFOF, ¶70). But at no point did Nettles try to move his arms away from Zens. Nettles was not resisting and was certainly not actively resisting. (PPFOF, ¶¶70). Slamming a person's head into a squad car with enough force to chip their front tooth in half, is undisputedly as use of significant force. Defendants do no dispute that Nettles face contacted the side of the police car. (DPFOF, ¶78). However, the parties dispute whether Nettles was resisting. The video available does not show any quick movements by Nettles and supports the Plaintiffs' proposed finding of fact. (PPFOF, ¶¶68-70). Only after slamming Nettles head into the squad car did Zens turn his body camera on. (PPFOF, ¶72).

Here, there is no dispute that significant force was used against Nettles. (DPFOF, ¶78). The question is whether the significant use of force was justified. Nettles has declared under penalty of perjury he was not resisting, and the body camera footage of the incident does not contradict this testimony. Under the *Outlaw* case the defendants cite, Zens use of force is only appropriate when a suspect is actively resisting. Nettles was not actively resisting. (PPFOF, ¶¶68-70). Without any resistance on Nettles part, a reasonable officer would not have slammed Nettles head into the squad car, knocking Nettles glasses off his face and chipping his front tooth. At all times Zens had control

11

of Nettles and escalated the use of force beyond what a reasonable officer in that circumstance would have done and finder of fact could reasonably come to this conclusion. The clear disputes of fact established here prevent Zens Summary Judgment request. *Deets*, 811 F.3d 982; *Anderson*, 477 U.S. 255. Further, the defendants fail to cite a single case where passive or non-resistance, as alleged here, warrants the admitted to force used by Zens.

### III. ZENS AND VANDER STEEGS' FAILURE TO INTERVENE

A defendant may be held liable for failing to stop another officer's use of excessive force if the defendant knew that the other officer was violating the plaintiff's constitutional rights and the defendant had a "realistic opportunity" to prevent the violation. *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005). "A realistic opportunity means a chance to warn the officer using excessive force to stop." *Miller v. Gonzalez*, 761 F.3d 822, 826 (7th Cir. 2014) (internal quotation marks omitted). "An officer who uses excessive force on a suspect could know that another officer is also using such force and could have a realistic opportunity to prevent that officer from continuing to use that force." *Conforti v. City of Franklin*, No. 20-C-0349, 2021 U.S. Dist. LEXIS 172697 *9-10 (E.D. Wis. Sep. 13, 2021).

Vander Steeg directed Zens to apprehend Nettles who was attempting to record them. (PPFOF, ¶¶61-65). Zens brought Nettles over to the squad car and was within an arm's length of Vander Steeg. (PPFOF, ¶65). When Zens began slamming Nettles into the squad car, Vander Steeg was within an arm's length and quickly assisted. (PPFOF, ¶¶68). As Vander Steeg was so close to the situation, he had a realistic opportunity to instruct his subordinate officer to refrain from slamming Nettles into the car. (PPFOF, ¶¶68).

Likewise, when Zens arrived on the scene, Lux was face down in a puddle of water. (PPFOF, ¶¶58-63). Zens could have stopped this abuse from continuing and help move Lux out

12

of the puddle so he could breathe. Zens had ample opportunity to move Lux to a safer location out of the pooling water but allowed this abuse to continue. Lux remained in the puddle, struggling to breathe until he was finally lifted. (PPFOF, ¶¶73-74).

Both officers were in close proximity to one another, witnessed excessive force being used against non-resisting suspects and both failed to take any action when they easily could have remedied the constitutional violations occurring. A jury could reasonably conclude as such based on the disputes of fact and video evidence available. The Defendants present no argument as to the element of "realistic opportunity" to stop a constitutional violation. (D. 41, p. 15). The Defendants only argument on summary judgment is that no constitutional violation occurred. *Id*. Therefore, if the court finds that a constitutional violation has occurred, the defendants have failed to prove their burden entitling them to dismissal of these claims. As Plaintiffs have asserted in sections I and II, an ultimate finder of fact could reasonably conclude that constitutional violations did indeed occur. Zens and Vander Steeg's request for dismissal of the failure to intervene claims must be denied.

### IV. VANDER STEEG AND ZENS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

The Defendants Vander Steeg and Zens assert qualified immunity. Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant asserts qualified immunity, the plaintiff bears the burden of showing that: (1) the facts, viewed in the light most favorable to the plaintiff, establish a violation of a constitutional right; and (2) the right violated was clearly established at the time of use of force. *Allin v. City of Springfield*, 845 F.3d 858, 862 (7th Cir. 2017).

Here, the facts asserted to be viewed in the light most favorable to the plaintiffs require a view that: 1) After Lux initially walked away from Vander Steeg he was not actively resisting (PPFOF, ¶50); 2) Vander Steeg then thew the non-resisting Lux to the ground (PPFOF, ¶50); 3) while on the ground, Lux was not resisting and was struggling to breathe (PPFOF, ¶52-54); 4) Vander Steeg required Lux to stay in that position for approximately 10 minutes (PPFOF, ¶55-56); 5) Nettles was not resisting when approached by Zens (PPFOF, ¶70); and 6) Zens slammed the non-resisting Nettles face into the cop car. (PPFOF, ¶68-70).

The threshold question for the court in determining qualified immunity "is whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002). (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)). The Seventh Circuit has made clear "that police officers do not have the right to shove, push, or otherwise assault innocent citizens without any provocation." *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996). At the time of these incidents, it was well-established that "police officers cannot continue to use force once a suspect is subdued." *Abbott*, 705 F.3d at 732. And "it was well-established in this circuit that police officers could not use significant force on nonresisting or passively resisting suspects." *Id*. Slamming a suspect into the ground and keeping his face in a puddle where he struggles to breathe amounts to significant force. If Lux was not actively resisting, as asserted, the use of significant force in slamming him to the ground was a known constitutional violation and qualified immunity must be denied. Likewise, slamming a non-resistant suspects' head into a car, breaking his tooth is a use of significant force that is clearly prohibited against a non-resistant person.

In a strikingly similar case, the Seventh Circuit found that officers slamming a non-resistant person's head into a car does not entitle officers to qualified immunity:

14

> However, accepting as true Holmes's contention that he did not physically resist the officers, we cannot say that Teipel could have reasonably thought the types of gratuitous force Holmes has described were justified. No reasonable officer could have thought that it was permissible to slam Holmes's head against the car simply because his fellow officer deemed him a "smart ass," for example, nor could the officer have thought it proper to continually grind his knee into the face of an unresisting arrestee.

*Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 688 (7th Cir. 2007). It was clearly established law that no reasonable officer would slam the head of a non-resistant suspect and continue to cause addition distress after the fact.

The Northern District Court of Indiana recently rejected a qualified immunity argument where an officer failed to intervene to prevent a Deputy from tripping a non-resisting suspect. *Stewardson v. Cass Cty.*, No. 3:18-CV-958 DRL-MGG, 2021 U.S. Dist. LEXIS 198119 *7-12 (N.D. Ind. Oct. 14, 2021). The *Stewardson* court found that watching and failing to stop an officer from tripping a non-resistant suspect was an obvious violation that any state actor would know was a violation. *Id*. Here the conduct alleged is more egregious than a trip. Taking the facts in the light most favorable to the Plaintiffs, the conduct of Vander Steeg and Zens demonstrated obvious violations that any state actor would know was a violation. *See e.g., Abdullahi*, 423 F.3d at 775; *see also Morrell v. Mock*, 270 F.3d 1090, 1100 (7th Cir. 2001) (clearly established law may also be shown by demonstrating "that the violation is so obvious that a reasonable state actor would know that what he is doing violates the Constitution."); *accord City of Escondido v. Emmons*, 139 S. Ct. 500, 503, 202 L. Ed. 2d 455 (2019).

Even if the court finds that Lux and Nettles conduct amounted to passive resistance, qualified immunity must still fail under the clear law of the Seventh Circuit. *Phillips v. Comm. Ins. Corp.*, 678 F.3d 513, 525 (7th Cir. 2012); ("An officer's decision to substantially escalate the use of force in response to "passive" non-compliance is incompatible with the Seventh Circuit's

15

excessive force doctrine."; *See Becker v. Elfreich*, 821 F.3d 920, 927 (7th Cir. 2016) (failure to obey command to get on the ground was passive resistance); see *Abbott v. Sangamon Cnty*, 705 F.3d 706, 730 (7th Cir. 2013)(failure to turn over on the ground was not active resistance); see *Smith v. Ball State Univ.*, 295 F.3d 763, 770-71 (7th Cir. 2002) (plaintiff who failed to exit vehicle on command was "not actively resisting"). "[W]illful non-compliance [is] not the same as 'actively resisting' but instead a passive 'resistance requiring the minimal use of force.'" *Id*. at 525 (emphasis omitted) (quoting *Smith v. Ball Univ.,* 295 F.3d 763, 771 (7th Cir. 2002)).

The law proscribing escalation of force on non-resistant or even "passively" resisting individuals was well established at the time these events occurred, thus, Vander Steeg and Zens are not entitled to qualified immunity. *See e.g. Todero v. Blackwell*, 383 F. Supp. 3d 826, 833-36 (S.D. Ind. 2019). The court must reject Vander Steeg and Zens assertion of qualified immunity.

## V. PUNITIVE DAMAGES

The Seventh Circuit has stated, "Punitive damages are recoverable in §1983 actions where the defendant had a reckless or callous disregard to the federally protected rights of others." *Woodward v. Corr. Med. Servs. of Illinois, Inc.*, 368 F.3d 917, 930 (7th Cir. 2004); *see also Calhoun v. DeTella*, 319 F.3d 936, 942 (7th Cir. 2003) (same); *Kemezy v. Peters*, 79 F.3d 33, 34 (7th Cir.1996)(punitive damages are "to punish the defendant for reprehensible conduct and to deter him and others from engaging in similar conduct.").

Whether or not to award punitive damages is a question for a jury to determine as the Seventh Circuit has not yet articulated the required burden of proof for punitive damages in § 1983 cases. *See Coulter v. Vitale*, 882 F.2d 1286, 1289 (7th Cir.1989). The two cases cited by the Defendants certainly do not suggest that denial of punitive damages at the summary judgment stage is appropriate. In fact, they state the opposite:

16

> The argument overlooks a key feature of punitive damages -- that they are never awarded as of right, no matter how egregious the defendant's conduct. If the plaintiff proves sufficiently serious misconduct on the defendant's part, the question whether to award punitive damages is left to the jury, which may or may not make such an award.

*Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640 (1983 (Citing D. Dobbs, Law of Remedies 204 (1973)). Here, the Plaintiffs through their declarations and video footage have asserted that police officers used excessive force on them while they were not resisting. A jury could easily conclude that this type of behavior amounted to callous disregard of Lux and Nettles protected rights. This is exactly the type of reprehensible conducted that should be punished to deter other officers from engaging in similar conduct. The Defendants punitive damages argument is improper and unsupported at the summary judgment stage and should be rejected.

## CONCLUSION

For the reasons stated herein, the Plaintiffs respectfully request that Whitewater Defendants' Vander Steeg and Zens' Motion for Summary Judgement be denied regarding the Plaintiffs' Excessive Force and Failure to Intervene claims.

Submitted this 21st of October, 2021 by:

s/ David J. Lang
David J. Lang
Kevin Raasch
Judge Lang & Katers, LLC
8112 W. Bluemound Rd. Ste. 101
Wauwatosa, WI 53213
P: (414) 777-0778
dlang@jlk-law.com
kraasch@jlk-law.com
Attorneys for Plaintiffs
