UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DANGELO SHAUN LUX, and
LORENZO NETTLES,

                      Plaintiffs,

    v.

CITY OF WHITEWATER,
AARON RAAP, ADAM
VANDER STEEG, MIKE
ZENS, JUSTIN STUPPY,
WALWORTH COUNTY,
RICHARD JOHNSON and
KURT PICKNELL,

                      Defendants.

Case No. 20-CV-1057

---

### DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

---

Defendants City of Whitewater, Aaron Raap, Adam Vander Steeg, Mike Zens, and Justin Stuppy (the "Whitewater Defendants") by their attorneys, Gunta Law Offices, S.C., submit the following Reply Memorandum in support of their Motion for Summary Judgment.

### INTRODUCTION

On October 21, 2021, Plaintiffs, Dangelo Lux and Lorenzo Nettles, filed their response to the Whitewater Defendants' Motion for Summary Judgment. Plaintiffs' Response failed to address the Whitewater Defendants arguments that: Officer Justin Stuppy lacked personal involvement; Plaintiffs' false arrest claim are barred under *Heck v. Humphrey* and because the Officers had probable cause; Plaintiffs equal protection claim must be dismissed because there is no evidence that the Officers were "motivated by a discriminatory purpose"; and that the *Monell* claim against the City of Whitewater and Aaron Rapp must be dismissed. Such failure to respond constitutes a

waiver in this district, therefore entitling the Whitewater Defendants to summary judgment on those claims. *U.S. Bank Nat. Ass'n v. Long*, No. 13-C-0257, 2014 WL 2050662, at *5 (E.D. Wis. May 19, 2014).

Plaintiffs did respond to the Whitewater Defendants' arguments on excessive force, failure to intervene, qualified immunity, and punitive damages. Plaintiffs attempt to overcome summary judgment on these claims by submitting declarations—contradicting concrete evidence previously submitted by defendants—that are solely dependent on Plaintiffs' recollection of their intoxicated night out at the bars more than three years after the incident. Plaintiffs have not created a genuine dispute of material fact and simply attempt to confuse the Court. For instance, Plaintiffs do not dispute that Lieutenant Vander Steeg shouted, "I'm telling you with a lawful order to get over here now." (Dkt. 66, ¶ 39) But dispute that they continued walking away by asserting that they "slowly walked approximately 4-6 steps away from Lieutenant Vander Steeg as they assumed he was going to tell them to continue walking home." *See* (Dkt. 66, ¶ 40) This is not a genuine dispute of material fact that precludes summary judgment because what the Plaintiffs assumed the Lieutenant was going to say is speculation. And such speculation does not change the undisputed evidence that Lieutenant Vander Steeg commanded Plaintiffs to walk towards him, and whether Plaintiffs walked "slowly" or not in the opposite direction of the Lieutenant—they defied his lawful order. *See* (Dkt. 66, ¶ 40)

In short, Plaintiffs' response is artfully littered with red herrings, but they do not change the undisputed facts that the Plaintiffs resisted the Officers' arrest. Therefore, Plaintiffs Response is insufficient to defeat Defendants' Summary Judgment motion on the remaining claims.

## DISCUSSION

## I. PLAINTIFFS WAIVED THEIR EQUAL PROTECTION, FALSE ARREST, *MONELL* CLAIM AGAINST THE CITY OF WHITEWATER AND AARON RAPP, AND ALL CLAIMS AGAINST JUSTIN STUPPY.

Plaintiffs' Response to the Whitewater Defendants' Motion for Summary Judgment completely failed to address the following arguments:

> I. The Claims Alleged Against Officer Stuppy Must be Dismissed for Lack of Personal Involvement;
>
> II. Plaintiffs' False Arrest Claim Must Fail;
>
> III. Plaintiffs' Equal Protection Claims Must be Dismissed Because there is no Evidence that the Officers were "Motivated by a Discriminatory Purpose"; and
>
> VII. The Monell Claim against the City of Whitewater and Aaron Rapp Must be Dismissed.

*See Generally* (Dkt. 68, Pltfs' Response)

Those claims must be Dismissed. In this Circuit, a failure to respond is considered a waiver of those claims. *See Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1075 (7th Cir. 2016)(concluding that the counts were waived since Plaintiffs never responded to Defendants' arguments) *Betco Corp., Ltd. v. Peacock*, 876 F.3d 306, 309 (7th Cir. 2017) (underdeveloped or conclusory arguments in response to motion for summary judgement constitutes waiver); *Walton v. U.S. Steel Corp.*, 497 F. App'x 651, 655 (7th Cir. 2012) (non-movant waived argument "by failing to raise it in response to summary judgment"); *Laborers' Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999) ("We have long refused to consider arguments that were not presented to the district court in response to summary judgment motions."); *see also U.S. Bank Nat. Ass'n v. Long* at *5. Therefore, this Court must grant the Whitewater Defendants uncontested summary judgment motion on these claims.

## II. JUSTIN STUPPY SHOULD BE DISMISSED FROM THIS LAWSUIT FOR LACK OF PERSONAL INVOLVEMENT.

3

Plaintiffs also admit that Officer Stuppy arrived after Lux and Nettles were arrested and that he did not help the officers make the arrest. (Dkt. 66, ¶¶ 84-85) As argued in the moving Brief, Courts in the Seventh Circuit routinely dismiss Section 1983 claims against officers who were not personally involved in the use of force or arrest. *See Outlaw v. Vill. of Shorewood*, No. 19-CV-1092, 2021 WL 424224, at *6 (E.D. Wis. Feb. 8, 2021); *See e.g. Trout v. Frega*, 926 F. Supp. 117, 120-21 (N.D. Ill. 1996) (ruling that "[t]he mere presence of the three officers, without more, does not constitute their requisite § 1983 personal involvement in any constitutional violation which may have occurred"); *see also Smith v. Vill of Hazel Crest*, 2013 WL 182814, at 2 (N.D. Ill. Jan. 17, 2013) (dismissing Plaintiff's excessive force claims for lack of personal involvement because the defendant officer did not exert any force upon the suspect during the arrest). Therefore, this Court must dismiss all claims brought against Officer Stuppy.

### III. THE COURT SHOULD NOT ACCEPT PLAINTIFFS' FACTS.

Plaintiffs attempt to defeat summary judgment by submitting declarations describing their intoxicated night out at the bars over three years after the incident, which blatantly contradicts objective evidence in the record, i.e., the Defendants Body Camera footage, Police reports, deposition testimony, and even Plaintiffs' guilty plea. Plainitffs' purported "evidence" cannot create a dispute of a fact that is actually supported by the record.

Courts are instructed that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, it should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007); *Rowe v. DeRosa*, No. 15-C-1006, 2018 WL 502658, at *7 (E.D. Wis. Jan. 22, 2018). Furthermore, courts in this Circuit have ruled that "[t]he Court may consider video evidence, and in situations where the video

evidence refutes the plaintiff's account of the facts, 'the court should not accept plaintiff's story for purposes of summary judgment.'" *Jackson v. City of Bloomington*, No. 17-CV-1046-JES-JEH, 2019 WL 570729, at *6 (C.D. Ill. Feb. 12, 2019); *Gillis v. Pollard*, 554 F. App'x 502, 506 (7th Cir. 2014) (citing *Scott v. Harris*, 550 U.S. 372, 378–81 (2007)) Indeed, *Scott v. Harris* ruled that the summary judgment standard adjusts when there is video evidence and that courts should "view facts in the light depicted by the videotape." *Scott* at 378–81. Here, the Court should not accept Plaintiffs' distorted recollection of the facts, which no reasonable jury could believe and one that contradicts clear objective evidence, including video evidence already in the record.

For example, Plaintiffs have proffered facts where they, the assailants, assert that they were not doing anything wrong or illegal. (Dkt. 64, ¶¶ 17-24; Dkt. 68, p. 2, 10) Plaintiffs however **did not** respond to Defendants' argument that they had probable cause to arrest the Plaintiffs, and it is undisputed that they pled guilty to disorderly and objectionable conduct. *See* (Dkt. 66, ¶¶ 88-89). Thus, as a matter of law, under *Heck v. Humphrey*, Plaintiffs cannot now claim that they did not do anything illegal or that they were only "arrested because they failed to go over to Lieutenant Vander Steeg immediately." It would be unreasonable for a jury to conclude that Plaintiffs "were not doing anything wrong or illegal" when they pled guilty to the crime of disorderly and objectionable conduct for their actions on September 20, 2018.

The same holds true for the proffered facts in which Plaintiffs attempt to dispute clear video evidence. Plaintiffs argue that they did not resist apart from their initial few steps. *See* (Dkt. 68, p. 8) Although Plaintiffs argue this—the video evidence clearly refutes this and shows both Plaintiffs actively resisting the arrest. On Lieutenant Vander Steeg's body camera, at the 1:20 minute mark, Lux is commanded to put his hands behind his back, he turns and states "no," several times, while keeping his hands out in front of him. (Dkt. 66, ¶¶ 41-42; Dkt. 44-1) A few seconds

5

later, Lieutenant Vander Steeg again commands Lux to place his hands behind his back—this time Lux puts his hands on head. (Dkt. 44-1) The video then shows Lieutenant Vander Steeg struggling to move Lux's arms from behind his head, while ordering Lux to put his hands behind his back at the same time. (Dkt. 44-1) On Johnson's body camera, at the 1:00 minute mark, Nettles attempts to break free and flee from Officer Zens. (Dkt. 58, ¶ 71; Dkt. 39-1) Officer Zens subsequently employs the wall-stabilization technique to gain control over Nettles. (Dkt. 58, ¶ 75; Dkt. 39-1) This is all on video, thus the Court is not required to accept Plaintiffs' inconsistent and self-serving statements that the event did not occur as depicted by the video evidence. *See Scott v. Harris*, 550 U.S. 372, 378–81 (2007)) (ruling that summary judgment standard adjusts when there is video, and that courts should "view facts in the light depicted by the videotape.") Notably, Plaintiffs do not dispute the authenticity of the body camera footage and rely on many of the same videos in their Response. Therefore, where the video evidence refutes the Plaintiffs' account of the facts, the Court should not accept Plaintiffs' story for purposes of summary judgment.

### IV. THE WHITEWATER OFFICERS' USE OF FORCE WAS OBJECTIVELY REASONABLE UNDER THE CIRCUMSTANCES.

Plaintiffs' response to Defendants' Fourth Amendment argument misses the mark by erroneously relying on Plaintiffs' subjective intent and belief—which is irrelevant under the Fourth Amendment standard. Indeed, Courts analyze excessive force claims under an "objective reasonableness" standard that depends on the facts and circumstances viewed from the "perspective of a reasonable officer on the scene and not one with 20/20 hindsight." *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In this analysis, courts must allow "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham* at 396–97. The amount of force allowed depends on

6

the totality of the circumstances, including, among other things, the severity of the crime at issue, whether the suspect posed a threat to the officers or others, and whether the suspect was actively resisting arrest or attempting to evade arrest by flight. Courts also "give considerable leeway to law enforcement officers' assessments about the appropriate use of force in dangerous situations." *Baird v. Renbarger*, 576 F. 3d 340, 344 (7th Cir. 2009).

Plaintiffs' subjective belief that they did or did not intend to resist is of no consequence because the objective actions, such as: walking away, disobeying an officer's orders, and refusing to put their hands up, would demonstrate to a reasonable officer that they did intend to resist. Here, the totality of the circumstances show that the Whitewater Officers were in a dangerous situation, facing intoxicated and defiant suspects who had displayed hostility prior to their arrest by yelling profanities and pushing a victim, and the Plaintiffs did not give themselves up. All of these factors weigh heavily in the Defendants favor as to the reasonableness of their actions.

First, it is undisputed that Plaintiffs pled guilty to disorderly and objectionable conduct for their actions of yelling profanities and pushing Piper on September 20, 2018. (Dkt. 66, ¶¶ 88-89) The crime required immediate intervention to prevent further harm to Piper.

Second, and in unison with the first factor, Plaintiffs posed a threat to Piper, who told the Officers that Plaintiffs tried to jump him on his way home, as well as anyone else in Plaintiffs' vicinity. (Dkt. 58, ¶ 86; Dkt. 43-1) The video is clear on this. It is also undisputed that Lux made verbal threats to Lieutenant Vander Steeg and other officers that he was "going to get fucking mad" and "take care of it himself," thirty minutes prior to his encounter with Piper. (Dkt. 66, ¶¶ 25, 30; Dkt. 42-1) This further supports the severity of the situation and weighs in the Defendants favor.

Third, it is undisputed that when Lieutenant Vander Steeg arrived on the scene he was outnumbered. (Dkt. 66, ¶¶ 36, 47; Dkt. 44-1) It is undisputed that he commanded that all three of the males come to him, and the Plaintiffs instead, defiantly walked in the opposite direction. (Dkt. 66, ¶ 36; Dkt. 44-1) The video clearly shows the Plaintiffs refusing multiple lawful orders to walk to Lieutenant Vander Steeg. (Dkt. 66, ¶ 39; Dkt. 44-1) When Lieutenant Vander Steeg made his way to Lux, who was an intoxicated 6'1 and 280-pound defensive lineman for the University of Wisconsin at the time, he ordered that Lux put his hands behind his back. (Dkt. 66, ¶¶ 16-18, 42) Lux instead, kept his arms at his side and defiantly stated "no" several times. (Dkt. 66, ¶ 42; Dkt. 44-1) Lieutenant Vander Steeg then again commanded that Lux place his hands behind his back and Lux again refused. (Dkt. 66, ¶¶ 43-44; Dkt. 44-1) Lieutenant Vander Steeg then again ordered that Lux put his hands behind his back, and he instead put his hands on his head. (Dkt. 44-1) Lieutenant Vander Steeg then again order that Lux put his hands behind his back, while simultaneously struggling bring his hands from behind his head to behind his back. (*Id.*) It is undisputed that even after Lux hands were behind his back, Lieutenant Vander Steeg struggled to keep control Lux either due to Lux's resistance, his size, or the rain. (Dkt. 66, ¶ 44-45, 60; Dkt. 44-1) It is undisputed that during Lieutenant Vander Steeg's attempt to arrest Lux, he made multiple request that responding officers "step it up" and get to the scene quickly. (Dkt. 66, ¶ 51; Dkt. 44-1) It is undisputed that while Lux's hands were behind his back he made a swift movement to break free and Lieutenant Vander Steeg employed the hug-yourself decentralization technique to gain control over him. (Dkt. 66, ¶ 52; Dkt. 44-1) Lux actively resisted throughout his arrest. It is also undisputed that it took two officers to get Lux into custody. (Dkt. 66, ¶¶ 61-62)

Even accepting Plaintiffs' suggestion that Lux was initially resisting, but stopped and placed his hand behind his back, and that Lieutenant Vander Steeg could not maintain control or

8

place handcuffs on him because of the rain: Plaintiffs could still not maintain an excessive force claim against Lieutenant Vander Steeg. *See* (Dkt. 66, ¶ 44, Pltfs' Response) Courts have held that officers may use force if they perceive a suspect is actively resisting, regardless of whether that perception later turns out to be inaccurate with the benefit of 20/20 hindsight. *See Graham*, 490 U.S. at 396; *Smith v. Ball State Univ.*, 295 F.3d 763 (7th Cir. 2002) (ruling that although suspect was unresponsive and not resisting, the officer's use of knee-strike was constitutional because the officer "could reasonably misconstrue [plaintiff's] unresponsiveness as resistance requiring the minimal use of force."); *see also Dunn v. Matatall*, 594 F.3d 348 (6th Cir. 2008) (holding that it was reasonable for officers to believe suspect's active resistance prevented them from extracting suspect from vehicle, and to therefore use force to gain compliance, even though it was later discovered that the suspect was not resisting and was instead being held back by their seatbelt); *Blosser v. Gilbert,* 422 F. App'x 453, 458 (6th Cir. 2008) (holding that the officers use of force was reasonable where the officer pulled the suspect out of the car and slammed him onto the ground even though the resistance was likely being caused because the suspects thighs came into contact with the steering wheel).

Further, and as explained in the moving Brief, an officer may use a takedown as a matter of law if a suspect is actively resisting or if a bystander intervenes to prevent the lawful arrest. (Dkt. 57, p. 11-13) Here, Lieutenant Vander Steeg faced both, as he repeatedly had to request that Nettles step back and he took Lux to the ground to gain control over the scene. (Dkt. 66, ¶¶ 49, 53)

With regards to Plaintiff Nettles, there is clear video evidence that he attempted to break free of Officer Zens, which prompted Officer Zens to employ a wall stabilization technique to gain

9

control over Nettles. *See* (Dkt. 39-1 at 1:00 minute mark) All of the Fourth Amendment factors therefore weigh heavily in the Defendants' favor; thus dismissal is warranted.

## V. PLAINTIFFS' FAILURE TO INTERVENE CLAIM MUST BE DISMISSED.

In Plaintiffs' response brief, they erroneously argue that Lieutenant Vander Steeg and Officer Zens failed to take reasonable steps to prevent each other's use of force on the Plaintiffs. (Dkt. 68, p. 12-13) Plaintiffs missed the point with regard to the Whitewater Officers, because both Officers were needed to assist the other Officer in controlling the resisting Plaintiffs. Officer Zens arrived while Lux was still standing but did not make it over to Lux until after Lieutenant Vander Steeg had performed the hug-yourself decentralization technique. (Dkt. 64, ¶ 57, Defs' Resp.; Dkt. 46-2, 18:11-14) Once on the ground, the struggle continued, and it took both officers nearly a minute to place Lux within handcuffs. (Dkt. 58, ¶ 62) Lieutenant Vander Steeg then instructed Officer Zens to arrest Nettles. (Dkt. 58, ¶ 66) Nettles also resisted the arrest, which required Lieutenant Vander Steeg to assist Officer Zens in securing Nettles after the wall stabilization technique was used. (Dkt. 58, ¶¶ 71-72) Thus, the two officers were working together to arrest the resisting Plaintiffs and they had no duty to intervene because there was no constitutional violation.

As stated in the moving Brief, an officer can only be held liable for failure to intervene if the officer had reason to know that (1) excessive force was being used; (2) a citizen had been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; and the officer had a realistic opportunity to intervene to prevent harm from occurring. *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)(emphasis added); *citing Anderson v. Branen*, 17 F.3d 552, 556 (2d Cir. 1994); *accord Byrd v. Clark,* 783 F.2d 1002, 1006–07 (11th Cir. 1986).

Here, as explained above and in the moving Brief, no excessive force was used in light of the circumstances. And, even if excessive force was used, the Whitewater Officers would not have had reason to know that they could not employ the control techniques, decentralization and wall stabilization, on the resisting Plaintiffs. Therefore, Plaintiffs cannot maintain a failure to intervene claim against the Whitewater Officers.

### VI. PLAINTIFFS' REMAINING CLAIMS ARE BARRED BY QUALIFIED IMMUNITY.

In Plaintiffs' Response brief, they again erroneously operate on facts in contradiction of their own guilty plea and clear video evidence to reach the conclusion that the Whitewater officers employed force on the compliant and non-resisting Plaintiffs that did not do anything wrong or illegal. Plaintiffs' assumption that those facts would stand despite the video evidence and guilty plea was a fatal error because the summary judgment standard adjusts when there is video evidence. *See Scott v. Harris*, 550 U.S. 372, 378–81 (2007)) (ruling that summary judgment standard adjusts when there is video, and that courts should "view facts in the light depicted by the videotape.") In addition, once qualified immunity is raised, Plaintiffs had to establish that the facts show an underlying constitutional violation and that the constitutional violation was "clearly established" with the requisite level of specificity at the time of the defendant's alleged misconduct. *See Mordi v. Zeigler*, 770 F. 3d 1161, 1164 (7th Cir. 1994). They did not.

Here, the Defendants submitted Plaintiffs undisputed guilty plea for their actions on September 20, 2018, as well as clear video evidence of the Plaintiffs actively resisting. (Dkt. 66, ¶¶ 88-89; Dkt. 46-3; Dkt. 39-1; Dkt. 42-1; Dkt. 43-1; Dkt. 44-1,2) It is clear based on the guilty plea that the Whitewater Officers had probable cause to make the arrest, and because the Whitewater Officers had probable cause to make the arrest, they also had the right to use force to effectuate the arrest. *See Saucier v. Katz*, 533 U.S. 194, 208 (2001) (the right to make an arrest

11

carries with it the right to use force). It is also clearly established that officers can use control techniques, such as the hug-yourself decentralization technique and wall stabilization technique, to gain control over resisting suspects. *Johnson v. Rogers*, 944 F.3d 966, 969 (7th Cir. 2019); *see City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 504, 202 L. Ed. 2d 455 (2019); *see, e.g., Kelsay v. Ernst*, 933 F.3d 975 (8th Cir. 2019) (qualified immunity for a bear-hug takedown when an angry suspect walked away from the officer for the second time); *Shafer v. Santa Barbara*, 868 F.3d 1110 (9th Cir. 2017) (qualified immunity for a leg-sweep takedown when the intoxicated suspect tried to pull away); *Hedgpeth v. Rahim*, 893 F.3d 802 (D.C. Cir. 2018) (qualified immunity for an arm takedown accompanied by a knee to the rear of the leg of a suspect who had pulled his hands away from the cuffing procedure). Plaintiffs cite no authority holding an officer liable for using a control technique on a resisting suspect. *See* (Dkt. 68, p. 13-16) In fact, Plaintiffs did not even address the cases cited by the Whitewater Defendants in their moving brief which involve circumstances similar to those at issue here, and that support dismissal of all excessive force claims. (*Id.*)

Instead, Plaintiffs sought to dispute the clear video evidence and guilty plea. Such an attempt failed because the undisputed evidence shows that the Whitewater Officers actions were in line with the clearly established law. Thus, the remaining claims should be dismissed as a matter of law on qualified immunity grounds.

### VII. PLAINTIFFS ARE NOT ENTITLED TO PUNITIVE DAMAGES.

Plaintiffs argue that *Soderbeck v. Burnett County* and *Smith v. Wade,* do not suggest that denial of punitive damages at the summary judgment stage is appropriate. (Dkt. 68, p. 16) This is incorrect. *Smith* states that "if the plaintiff proves sufficiently serious misconduct on the defendant's part, the question whether to award punitive damages is left to the jury, which may or

12

may not make such an award." *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640 (1983). The Plaintiffs have not proffered sufficient facts, which show that the Whitewater Defendants acted with evil motive or intent, or with callous indifference to Plaintiffs protected rights. In fact, it was the Plaintiffs' actions, in walking away from Lieutenant Vander Steeg when he requested that they come to him, and their continued resistance that created the danger and the need for force. Thus, based on the undisputed evidence and clear video evidence, no jury could conclude that the Whitewater Defendants acted with evil motive or with callous indifference to Plaintiffs protected rights. Therefore, Plaintiffs punitive damages claim should be dismissed.

## CONCLUSION

For the reasons set forth in the moving Brief and in this Reply, the Whitewater Defendants respectfully request that the Court grant them summary judgment dismissing all of the Plaintiffs claims against them, with prejudice.

Dated at Wauwatosa, Wisconsin, this 4th day of November.

**GUNTA LAW OFFICES, S.C.**
**Attorneys for Defendants, City of Whitewater, Aaron Raap, Adam Vander Steeg, Mike Zens and Justin Stuppy**

By: */s/ Kyle R. Moore* _____
Gregg J. Gunta, WI State Bar No. 1004322
Ann C. Wirth, WI State Bar No. 1002469
Jasmyne M. Baynard, WI State Bar No. 1099898
Kyle R. Moore, WI State Bar No. 1101745
Kiley B. Zellner, WI State Bar No. 1056806
9898 West Bluemound Road, Suite 2
Wauwatosa, Wisconsin 53226
T: (414) 291-7979 / F: (414) 291-7960
Email: gjg@guntalaw.com
          acw@guntalaw.com
          jmb@guntalaw.com
          krm@guntalaw.com
          kbz@guntalaw.com

13