# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

DANGELO SHAUN LUX, and
LORENZO NETTLES,

                   Plaintiffs,

                                               Case No. 20-CV-1057

     v.

CITY OF WHITEWATER,
AARON RAAP, ADAM
VANDER STEEG, MIKE
ZENS, JUSTIN STUPPY,
WALWORTH COUNTY,
RICHARD JOHNSON and
KURT PICKNELL,

                   Defendants.

---

## DEFENDANTS' RESPONSE TO PLAINTIFFS' PROPOSED FINDINGS OF FACT

---

Pursuant to Fed. R. Civ. P. 56 and Civil L.R. 56, Defendants respectfully submit the following Response to Plaintiffs' proposed findings of fact.

<u>Lux confronted by a group of individuals who had previously assaulted him</u>

1.     In the early morning of September 20, 2018, Dangelo Lux ("Lux") and Shaun Nettles("Nettles") left a bar in Whitewater, Wisconsin. (Declaration of Dangelo Lux ("Lux Aff."), ¶4).

**RESPONSE: Not disputed.**

2.     As Lux and Nettles were leaving the bar, a group of individuals from across the street started shouting at Lux. (Lux Aff., ¶5-7).

**RESPONSE: Not disputed.**

3.     Lux and Nettles are both African American males. (Lux Aff., ¶3); (Declaration of

LorenzoNettles ("Nettles Aff."), ¶3).

**RESPONSE: Not disputed.**

4.      Lux recognized these individuals as persons who had assaulted him earlier in the week.(Lux Aff., ¶5-7).

**RESPONSE: Not disputed.**

5.      Lux yelled back at the individuals from across the street. (Lux Aff., ¶5-7); (Nettles Aff., ¶5-7).

**RESPONSE: Not disputed.**

6.      At no time during this confrontation did Lux or Nettles approach these individuals or engage in any physical altercation with these individuals. *Id*.

**RESPONSE: Not disputed.**

7.      City of Whitewater police officers arrived outside of the bar as Lux continued to exchange words with individuals from across the street. (Lux Aff., ¶8-10); (Nettles Aff., ¶7-12).

**RESPONSE: Not disputed.**

8.      At no time did Lux have to be separated from these individuals as they were always across the street from him. (Lux Aff., ¶7); (Nettles Aff., ¶6).

**RESPONSE: Not disputed.**

9.      City of Whitewater police officers only approached Lux and did not approach the group ofindividuals across the street who had previously assaulted Lux. (Lux Aff., ¶10); (Nettles Aff., ¶8).

**RESPONSE: Not disputed.  Affirmatively state that the City of Whitewater police officers were called to the scene as backup and only approached Lux after Walworth County Sergeant Ira Martin took Lux's license to his squad car.  (Dkt. 66, ¶ 23)**

2

10.    Sergeant Martin spoke with Lux regarding the confrontation but did not have to "separate" him as the individuals were across the street at all times during their exchange of words. (Lux Aff., ¶8-10); (Nettles Aff., ¶7-12).

**RESPONSE: Not disputed.**

11.    Sergeant Martin requested Lux's driver's license which Lux complied. (Martin Decl. ¶ 2,Ex. 1, Martin Body Camera Footage at 0:30-5:00)

**RESPONSE: Not disputed.**

12.    Lux had consumed alcohol that night/early morning but was of legal age and was not driving that night/early morning. (Plaintiffs' Response to Whitewater Defendant's Proposed Findings of Fact; ¶17-18).

**RESPONSE: Not disputed.**

13.    Lux informed Sergeant Martin that the individuals that were yelling at him, had previously assaulted him. (Nettles Aff., ¶10).

**RESPONSE: Not disputed.**

14.    Sergeant Martin requested that Lux walk home. (Lux Aff., ¶9); (Nettles Aff., ¶11-12).

**RESPONSE: Not disputed.**

15.    Nettles assured Sergeant Martin that Lux was fine and that they would walk back to their house together. (Nettles Aff., ¶9-12).

**RESPONSE: Not disputed.**

16.    Lux complied with Sergeant Martin's request, shook Sergeant Martin's hand, and began walking back to his house with Nettles. (Lux Aff., ¶9-10); (Nettles Aff., ¶9-12).

**RESPONSE: Not disputed.**

3

<u>Lieutenant Vander Steeg approaches Lux and Nettles on their walk home</u>

17.     Approximately ten minutes into Lux and Nettles' walk home, they noticed a friend and former football teammate, Jack Piper ("Piper") walking ahead of them. (Lux Aff., ¶11-16); (Nettles Aff., ¶13-16) (Lang Aff., ¶6, Ex. D Vander Steeg Body Cam Footage of Piper Interview at 0:46-0:50).

**RESPONSE: Not disputed.**

18.     Lux called out to Piper as Lux wanted to ask him about the people who had previously assaulted him. (Lux Aff., ¶11-16); (Nettles Aff., ¶13-16).

**RESPONSE: Not disputed.**

19.     Lux began asking Piper about the previous incident where Lux was assaulted. (Lux Aff., ¶11-16); (Nettles Aff., ¶13-16).

**RESPONSE: Not disputed.**

20.     Lux, Nettles, and Piper were all conversing in the street, talking at normal volume. (Lux Aff., ¶11-16); (Nettles Aff., ¶13-16).

**RESPONSE: Disputed.  Lt. Vander Steeg testified that he had his windows slightly cracked, and could hear yelling, which is what drew his attention to the Lux, Nettles, and Piper.  (Dkt. 46-1, Ex. A, Vander Steeg Dep. at 37:10-23)**

21.     Lux and Nettles did not physically touch Piper, and Piper did not physically touch Lux or Nettles. (Lux Aff., ¶11-16); (Nettles Aff., ¶13-16).

**RESPONSE: Disputed.  Lt. Vander Steeg stated that he could see Piper getting pushed backwards across Fremont Street.  (Dkt. 46-1, Ex. A, Vander Steeg Dep. at 37-38).  During Lt. Vander Steeg's conversations with Piper:**

**Piper: They said they were going to beat me up.**

4

**Lt. Vander Steeg:** These two [Plaintiffs] said they were going to beat you up. Because I saw you guys pushing over here and yelling.

**Piper: You think it would be one versus two pushing someone.**

**Lt. Vander Steeg:** I saw these two guys [the Plaintiffs] pushing.

**Piper:** Yeah, but they were pushing me.

**(Dkt. 44-2, Ex. 4, Steeg Body Camera at 1:05-25; Dkt. 43-1, Ex. 2, Stuppy Body Camera at 8:05-8:20)**

22. During this conversation it was raining as it had been all night. (Lux Aff., ¶35, 39); (NettlesAff., ¶18).

**RESPONSE: Not disputed.**

23. Lux, Nettles and Piper were all talking in a non-aggressive manner and no physical confrontation ever occurred between them. (Lux Aff., ¶11-16); (Nettles Aff., ¶13-16).

**RESPONSE: Disputed. See response to proposed findings 20-21, *supra*.**

24. When interviewed later, Piper stated to Vander Steeg that Lux and Nettles are nice guys and that he was not disturbed by their actions prior to Vander Steeg approaching them. (Lang Aff. ¶6, Ex. D, 3:00 – 3:30).

**RESPONSE: Not disputed. Affirmatively state that Piper told Officer Stuppy that he was walking home when the Plaintiffs started threating and trying to jump him. Piper then stated "I'm kind of scared honestly." (Dkt. 43-1, Ex. 2, Stuppy Body Camera at 3:00-3:15)**

25. While Lux, Nettles and Piper were talking, they saw City of Whitewater police car driving towards them without its lights on. (Lux Aff., ¶18); (Nettles Aff., ¶17-18).

**RESPONSE: Not disputed.**

26.     The officer diving the vehicle was Defendant Vander Steeg. (D. 58, Whitewater Defendants Amended Proposed Finding of Fact, ¶32). (Affidavit of David J. Lang ("LangAff."), ¶3, Ex. A Body Camera Footage of Vander Steeg ("Vander Steeg BC"), at 0:01- 1:04).

**RESPONSE: Not disputed.**

27.     Vander Steeg was stationed in a Toppers parking lot before approaching the Plaintiffs. (Vander Steeg BC, 0:01-1:04).

**RESPONSE: Not disputed.**

28.     From Vander Steeg's initial position, he had to drive for over a minute to get to Lux and Nettles. (Vander Steeg BC, 0:01-1:04).

**RESPONSE: Plaintiffs' Proposed Fact does not comply with the requirements of Fed. R. Civ. P. 56 (c) and Civ.L.R.56(b)(2) of the Local Rules of the Eastern District, as it is not supported by any reference to admissible evidence. The Proposed Fact contains speculation as the Plaintiffs cannot attest to Lt. Vander Steeg's initial position or time it took him to drive to Lux and Nettles location. Therefore, the Proposed Fact should not be considered.**

**Moreover, the video speaks for itself and shows that it took him 30 seconds to drive around the block to the Plaintiffs locations. *See* (Dkt. 44-1, Ex. 3, Vander Steeg BC at 0:30-1:00)**

29.     From Vander Steegs' initial position, combined with the rain, Vander Steeg would not have been able to hear what Lux and Piper were talking about. (Vander Steeg BC, 0:01-1:04); (Lux Aff., ¶11-16); (Nettles Aff., ¶13-16).

**RESPONSE: Plaintiffs' Proposed Fact does not comply with the requirements of Fed. R. Civ. P. 56 (c) and Civ. L. R. 56(b)(2) of the Local Rules of the Eastern District, as it is not supported by any reference to admissible evidence. The Proposed Fact contains speculation**

6

as the Plaintiffs cannot attest to what Lt. Vander Steeg saw or heard. **Therefore, the Proposed Fact should not be considered.**

Furthermore, see response to proposed findings 20-21, *supra*.

30.     As they were in the street, Lux and Nettles began walking away towards their house. (LuxAff., ¶19-20); (Nettles Aff., ¶18-20).

**RESPONSE: Not disputed. Affirmatively state that Lt. Vander Steeg had given all three males, including Lux and Nettles, an order to come to him. *See* (Dkt. 44-1, Ex. 3, Vander Steeg Body Camera at 1:05-1:10)**

31.     Lux immediately put his hands in the air. (Lang Aff, ¶3, Ex. A, Vander Steeg Body Cam at 1:12).

**RESPONSE: Not disputed.**

32.     As Lux and Nettles were walking away, Lieutenant Vander Steeg began shouting for everyone to "get over here." (Lux Aff., ¶21); (Nettles Aff., ¶13-16); (Lang Aff., Ex. A, Vander Steeg BC at 1:00-1:15).

**RESPONSE: Not disputed.**

33.     Lux and Nettles did not understand why Lieutenant Vander Steeg was calling them over as they had done nothing wrong or illegal. (Lux Aff., ¶24, 30,33); (Nettles Aff., ¶20-24).

**RESPONSE: Disputed. Plaintiffs plead guilty to disorderly and objectionable conduct. See (Dkt. 66, ¶¶ 88-89). Moreover, Plaintiffs subjective belief is irrelevant to Plaintiffs claims. Therefore, the Proposed Fact should not be considered.**

34.     Lux and Nettles both walked approximately 4-6 steps away from Vander Steeg in the direction of their home. (Lux Aff., ¶23); (Nettles Aff., ¶20).

**RESPONSE: Disputed. The video speaks for itself and it shows the Plaintiffs walking**

7

approximately 15-20 steps away from Lt. Vander Steeg. **(Dkt. 44-1, Ex. 3, Vander Steeg Body Camera at 1:07-1:22)**

35. Vander Steeg ran past Piper to Lux. (Lux Aff., ¶22); (Nettles Aff., ¶21); (Lang Aff, ¶3, Ex. A, Vander Steeg BC at 1:15-1:22).

**RESPONSE: Disputed. The video speaks for itself. Piper walks over to Lt. Vander Steeg and states "I'm right here." (Dkt. 44-1, Ex. 3, Vander Steeg Body Camera at 1:13-1:18) Lt. Vander Steeg then walks towards Lux and Nettles and concurrently radios that he would take another officer. (Dkt. 44-1, Ex. 3, Vander Steeg Body Camera at 1:15-1:24)**

36. Lux had stopped walking and had placed his hands behind his head. (Lux Aff., ¶22); (Nettles Aff., ¶21); Lang Aff, ¶3, Ex. A, Vander Steeg Body Cam at 1:22).

**RESPONSE: Disputed. The video speaks for itself. Lux and Nettles walked past Lt. Vander Steeg, while he commanded that they come to him. (Dkt. 61-1, Ex. A, Vander Steeg Body Camera at 1:07-1:22) Plaintiffs did not stop walking in the other direction until Lt. Vander Steeg made his was to them and he turned and faced the officer with his hands out in front of him. (Dkt. 61-1, Ex. A, Vander Steeg Body Camera at 1:20-1:23)**

37. Nettles stopped walking and turned around as instructed by Vander Steeg. (Lux Aff., ¶23);(Nettles Aff., ¶22); Lang Aff, ¶3, Ex. A, Vander Steeg Body Cam at 1:27).

**RESPONSE: Disputed. The video speaks for itself. Lt. Vander never instructed Nettles to walk 15-20 steps past him, nor did he instruct him to turn around in place. Lt. Vander Steeg ordered that Lux and Nettles come to him. (Dkt. 61-1, Ex. A, Vander Steeg Body Camera at 1:07-1:22)**

38. Vander Steeg grabbed Lux's arms that were behind his head and tried to twist Lux's armsbehind his back. (Lux Aff., ¶23-30); (Nettles Aff., ¶22-28); (Lang Aff, ¶3, Ex. A, Vander Steeg Body Cam at 1:32-35).

8

**RESPONSE: Not disputed. Affirmatively state that Lt. Vander Steeg had commanded Lux to put his hands behind his back and Lux defied his order and placed his hands on his head, preventing Lt. Vander Steeg from placing handcuffs on him. (Dkt. 61-1, Ex. A, Vander Steeg Body Camera at 1:27-1:35)**

39.　　While this occurred, Lux was confused as to he was being grabbed by Vander Steeg and stated he didn't do anything wrong. (Lux Aff., ¶23-30); (Nettles Aff., ¶22-28); (Lang Aff, ¶3, Ex. A, Vander Steeg Body Cam at 1:20-1:25).

**RESPONSE: Not disputed. However, one's subjective intent is irrelevant in Fourth Amendment cases.**

40.　　While this occurred, Nettles was a few steps away, he did not approach, but pleaded with Vander Steeg that they had done nothing wrong. (Lux Aff., ¶32-33); (Nettles Aff., ¶22- 28); (Lang Aff, ¶3, Ex. A, Vander Steeg Body Cam at 1:40-1:45).

**RESPONSE: Disputed. The video speaks for itself. Nettles says "D, D, D, D, D, [referring to Lux] stop moving." He then follows Lt. Vander Steeg while he attempted to walk Lux to his squad car, and he began yelling that Lux "was not doing anything." Nettles was told to step back or he was going to get tased. (Dkt. 61-1, Ex. A, Vander Steeg Body Camera at 1:25-1:40)**

41.　　Vander Steeg threatened to taser Lux while he had control of Lux's arms. (Lux Aff., ¶28).

**RESPONSE: Disputed. The video speaks for itself. Lt. Vander Steeg did not have control over Lux's arms when he stated that Lux was going to get tasered. (Dkt. 61-1, Ex. A, Vander Steeg Body Camera at 1:25-1:32)**

42.　　Nettles did not come any closer to Vander Steeg as instructed. (Lux Aff., ¶32-33); (NettlesAff., ¶26-27); (Lang Aff, ¶3, Ex. A, Vander Steeg Body Cam at 1:40-1:45).

9

**RESPONSE: Disputed. Officer Zens stated that "[Nettles] would kick, backing up, come back. [Nettles] failed to listen to our commands in telling him to back up." (Dkt. 46-2, Ex. B, Zens Dep. at 27; 28:1-9)**

43.    Lux was not actively resisting or struggling at this time. (Lux Aff., ¶30-33, 35); (Nettles Aff., ¶28-30); (Lang Aff, ¶3, Ex. A, Vander Steeg Body Cam at 1:30-1:48).

**RESPONSE: Disputed. The video speaks for itself. Lux refused to comply with multiple commands to put his hands behind his back. See (Dkt. 61-1, Ex. A, Vander Steeg Body Camera at 1:30-1:48)**

44.    Despite having control of Lux's arms, Vander Steeg called for backup. (Lux Aff., ¶34);(Nettles Aff., ¶31).

**RESPONSE: Disputed. Vander Steeg called for backup because he was outnumbered and could not control the resisting Lux. (Dkt. 44-1, Ex. 3, Vander Steeg Body Worn Camera 1:25-1:48; Dkt. 46-1, Ex. A, Vander Steeg Dep. 102:20-25, 103:1-5) The video evidence speaks for itself.**

**Moreover, Lux's subjective belief that Lt. Vander Steeg had control over his arms is speculation and also irrelevant in excessive force cases. Therefore, the Proposed Fact should not be considered.**

<u>Vander Steeg's body camera turns off moments before he slams Lux
into the ground and backup arrives</u>

45.    Lux's arms were wet from the rain that night and Vander Steeg briefly failed to grip Lux'sarms but at no point during Vander Steeg's contact with Lux did Lux resist, pull his arms away, or struggle. (Lux Aff., ¶35); (Nettles Aff., ¶28-30).

**RESPONSE: Not disputed that Lux's arms were wet from rain. Dispute the remaining proposed fact. The video speaks for itself. Lux resisted the arrest throughout Vander Steeg's**

10

contact with him.  (Dkt. 44-1, Ex. 3, Vander Steeg Body Camera at 1:00-1:48; Dkt. 46-1, Ex. A, Vander Steeg Dep. 79-83)

46.     Vander Steeg had full control of Lux and Lux's arms were behind his back when Vander Steeg's body camera turned off. (Lux Aff., ¶35-36); (Nettles Aff., ¶28-30); (Lang Aff, ¶3, Ex. A, Vander Steeg Body Cam at 1:45-1:48).

**RESPONSE: Disputed. Lux forcefully moved his right arm forward in a punching motion to rip free of Lt. Vander Steeg's hands, which jarred Lt. Vander Steeg's body and camera enough that the wire disconnected from his camera's battery. (Dkt. 46-1, Ex. A,Vander Steeg Dep. 111:7-14)**

47.     While Vander Steeg had full control of Lux, he forcefully tossed Lux over his hip, slamming Lux face first into the street. (Lux Aff., ¶36-37); (Nettles Aff., ¶28-30).

**RESPONSE: Disputed. Lux made a quick movement forward, and had separated himself from Lt. Vander Steeg, when Lt. Vander Steeg performed the hug-yourself decentralization technique. (Dkt. 44-1, Ex. 3, Vander Steeg Body Worn Camera at 1:45-1:48; Dkt. 46-1, Ex. 1, Steeg Dep. 99:17-25; 100; 101:1-8)**

48.     Lux landed on his face, chest, and stomach. (Lux Aff., ¶36-37); (Nettles Aff., ¶28-30).

**RESPONSE:  Not disputed.**

49.     Lux's arm was bleeding from being slammed into the street. (Nettles Aff., ¶32).

**RESPONSE:  Not disputed.**

50.     At the time Vander Steeg slammed Lux into the street, Lux was not resisting or struggling in any way. (Lux Aff., ¶24, 31, 35); (Nettles Aff., ¶26-30).

**RESPONSE: Disputed. See response to proposed findings 45-47, *supra*.**

51.     Vander Steeg's body camera turned off seconds before he slammed Lux into the

11

street.(Lang Aff, ¶3, Ex. A, Vander Steeg Body Cam at 1:48).

**RESPONSE: Disputed. See response to proposed finding 46, *supra*.**

52. After being slammed into the street, Lux's face was directly in a puddle of water next to the street curb. (Lux Aff., ¶38-41); (Nettles Aff., ¶32-37).

**RESPONSE: Disputed. Lux was near the edge of the roadway on his stomach, but his face was not directly in a puddle of water. (Dkt. 46-1, Ex. A, Vander Steeg Dep. 81-82; 85:1-7)**

53. Vander Steeg placed his knee on Lux's back and began to handcuff Lux while his face was in a puddle struggling to breathe. (Lux Aff., ¶38-41); (Nettles Aff., ¶32-37).

**RESPONSE: Not disputed that the Lt. Vander Steeg used force to arrest the resisting Lux. Dispute that Lux's face was in a puddle. (Dkt. 46-1, Ex. A, Vander Steeg Dep. 81-82; 85:1-7)**

54. At this time, Lux was not resisting or struggling. (Lux Aff., ¶38-41); (Nettles Aff., ¶32-37).

**RESPONSE: Disputed. Lux resisted throughout the arrest, including while he was on the ground. (Dkt. 46-1, Ex. A, Vander Steeg Dep. 81:1-5, 83; Dkt. 46-2, Ex. B, Zens Dep. 23-24)**

55. Lux would remain on the ground face down in a puddle for approximately ten minutes. (Lux Aff., ¶49); (Nettles Aff., ¶32-37;56-57).

**RESPONSE: Plaintiffs' Proposed Fact does not comply with the requirements of Fed. R. Civ. P. 56 (c) and Civ. L. R. 56(b)(2) of the Local Rules of the Eastern District, as it is not supported by any reference to admissible evidence and pure speculation. Therefore, the Proposed Fact should not be considered.**

**Furthermore, Lux had free movement over his neck and face. (Vander Steeg Dep. 81-82; 85:1-7)**

56.     Lux stated multiple times while he was on the ground that he could not breathe and struggled to keep his mouth and nose out of the puddle. (Lux Aff., ¶38-40, 45, 47-48); (Nettles Aff., ¶32-37, 53-55).

**RESPONSE:  Plaintiffs' Proposed Fact does not comply with the requirements of Fed. R. Civ. P. 56 (c) and Civ. L. R. 56(b)(2) of the Local Rules of the Eastern District, as it is not supported by any reference to admissible evidence.  Lux does not say in his declaration that he stated that he could not breathe. Therefore, the Proposed Fact should not be considered.**

**Furthermore, Lux had free movement over his neck and face. (Vander Steeg Dep. 81-82; 85:1-7)**

57.     After Lux was slammed to the ground, other officers arrived on the scene. (Lux Aff., ¶44);(Nettles Aff., ¶38).

**RESPONSE: Disputed.  Officer Zens arrived while Lux was still standing. (Dkt. 46-2, Ex. B, Zens Dep. 18:11-17)**

Officer Zens slams Nettles' face into a squad car

58.     As Vander Steeg kept Lux face down in the puddle, Nettles became concerned that Lux could drown. (Lux Aff., ¶44); (Nettles Aff., ¶33-38).

**RESPONSE: Disputed. Vander Steeg never touched Lux's head and Lux had free range of motion over his neck and face.  (Dkt. 46-1, Ex. A, Vander Steeg Dep. 81-82; 85:1-7) Nettles subjective belief is also irrelevant to his Fourth Amendment claims.**

59.     Officer Zens arrived on the scene and briefly assisted with holding Lux on the ground while Lux's face was directly in a puddle of water. Lux was not resisting at this time. (Nettles Aff., ¶38-40).

**RESPONSE: Disputed. Lux resisted throughout the arrest, including while he was on the**

13

ground. **(Dkt. 46-1, Ex. A, Vander Steeg Dep. 81:1-5, 83; Dkt. 46-2, Ex. B, Zens Dep. 23-24) Lux also had free range of motion over his neck and face. (Dkt. 46-1, Ex. A, Vander Steeg Dep. 81-82; 85:1-7)**

60. When he arrived on the scene, Officer Zens did not have his body camera on. (Lang Aff., ¶4, Ex. B., Body Camera Footage of Officer Zens at 0:01-2:51).

**RESPONSE: Not disputed.**

61. Nettles began recording Vander Steeg's treatment of Lux. (Lux Aff., ¶44); (Nettles Aff., ¶38).

**RESPONSE: Plaintiffs' Proposed Fact does not comply with the requirements of Fed. R. Civ. P. 56 (c) and Civ. L. R. 56(b)(2) of the Local Rules of the Eastern District, as it is not supported by any reference to admissible evidence. Therefore, the Proposed Fact should not be considered.**

62. An officer yelled "phone, phone" and Officer Zens ran from Lux towards Nettles. (Lux Aff., ¶44); (Nettles Aff., ¶41).

**RESPONSE: Plaintiffs' Proposed Fact does not comply with the requirements of Fed. R. Civ. P. 56 (c) and Civ. L. R. 56(b)(2) of the Local Rules of the Eastern District, as it is not supported by any reference to admissible evidence and contains inadmissible hearsay. Therefore, the Proposed Fact should not be considered.**

63. Officer Zens instructed Nettles to place his arms behind his back. (Nettles Aff., ¶42).

**RESPONSE: Not disputed.**

64. Nettles was simply recording the interaction between Vander Steeg and Lux when Zens grabbed him. (Nettles Aff., ¶38-44).

**RESPONSE: Plaintiffs' Proposed Fact does not comply with the requirements of Fed. R.**

14

Civ. P. 56 (c) and Civ. L. R. 56(b)(2) of the Local Rules of the Eastern District, as it is not supported by any reference to admissible evidence. Therefore, the Proposed Fact should not be considered.

Furthermore, throughout the police interaction with Lux, Nettles would kick at the officers, backup and then do it again. (Dkt. 46-2, Ex. B, Zens Dep. 28:1-2)

65. Zens had control of Nettles' arms and moved him near a squad car. (Nettles Aff., ¶42-46).

**RESPONSE: Disputed. When Officer Zens attempted to grab Nettles' left arm, he quickly pulled his left arm away from Officer Zens. (Dkt. 46-2, Ex. B, Zens Dep. 33:17-25) Moreover, Nettles subjective belief that Officer Zens had control over his arms is speculation and also irrelevant in excessive force cases. Therefore, the Proposed Fact should not be considered.**

66. Nettles did not resist, struggle, or pull his arms away from Zens. (Nettles Aff., ¶42-46).

**RESPONSE: Disputed. See response to proposed findings 65, *supra*.**

67. Once over by the squad car, Zens had control of Nettles arms. (Nettles Aff., ¶42-46).

**RESPONSE: Disputed. Nettles continued to resist the arrest by not allowing Officer Zens to place his hands behind his back, and he attempted to break free and run from Officer Zens. (Dkt. 39, ¶ 2, Ex. A, Johnson Body Worn Camera 00:55-1:08) The video evidence speaks for itself.**

68. Officer Zens then proceeded to slam Nettles face into the squad car with Vander Steeg standing by. (Nettles Aff., ¶47-50). (Lang Aff., ¶5, Ex. C, Body cam footage of Deputy Johnson at 1:04-1:12).

**RESPONSE: Disputed. The cited video evidence speaks for itself. Officer Zens performed**

15

a wall stabilization technique on Nettles and Vander Steeg was standing next to Lux. (Dkt. 61-3, Ex. C, Johnson Body Camera at 1:00-1:10)

69.      Nettles face made direct contact with the squad car and was so forceful that Nettles glassesfell off his face and his front tooth chipped in half. (Nettles Aff., ¶47-50). (Lang Aff., ¶5, Ex. C, Body cam footage of Deputy Johnson at 1:04-1:12).

**RESPONSE: Not disputed.**

70.      Nettles was not resisting or pulling his arm away from the officer when he slammed Nettlesface into the squad car breaking his tooth. (Nettles Aff., ¶47-50). (Lang Aff., ¶5, Ex. C, Body cam footage of Deputy Johnson at 1:04-1:12).

**RESPONSE: Disputed.  The cited video evidence speaks for itself.  In the video, Nettles attempts to break free and run from Officer Zens.   Officer Zens then performs a wall-stabilization technique on Nettles by pushing him against the squad car to gain control. *See* (Dkt. 61-3, Ex. C, Johnson Body Camera at 1:00-1:10)**

71.      After slamming Nettles head into the squad car, Nettles was handcuffed. (Nettles Aff., ¶51). (Lang Aff., ¶5, Ex. C, Body cam footage of Deputy Johnson at 1:04-1:12).

**RESPONSE: Disputed. The video evidence speaks for itself.  Officer Zens performed a wall-stabilization technique on Nettles, and Nettles was handcuffed after Lt. Vander Steeg and Deputy Johnson came over to assist in the arrest.  (Dkt. 61-3, Ex. C, Johnson Body Camera footage at 1:00-1:30)**

72.      After slamming Nettles' head into the squad car and handcuffing Nettles, Officer Zens finally turned his body camera on. (Lang Aff., ¶4, Ex. B, Body cam footage of Officer Zens at 0:01-2:51).

**RESPONSE: Disputed.  Officer Zens performed a wall-stabilization technique on Nettles with the nearby squad car.  *See* (Dkt. 61-3, Ex. C, Johnson Body Camera footage at 1:00-**

**1:10)  The video evidence speaks for itself.**

73.     At this time, Nettles could see that Lux was still face down in a puddle next to the curb and plead with officers to get him out of the puddle. (Nettles Aff., ¶53-45). (Lang Aff., ¶4, Ex.B, Body cam footage of Officer Zens at 0:30-0:43).

**RESPONSE: Disputed. The cited video evidence speaks for itself.  Lux was on his stomach with free range of motion over his neck and face. Nettles never plead with the officers for them to get Lux out of a puddle.  (Dkt. 61-2, Ex. B, Zens Body Camera at 0:30-0:43)**

74.     Lux did not attempt to move from his position Vander Steeg placed him in out of fear that Vander Steeg would further injury him. (Lux Aff., ¶46).

**RESPONSE: Not disputed that Lux did not move after being handcuffed. The remaining proposed fact regarding Lux's subjective intent is irrelevant to Plaintiffs claims and should not be considered.**

75.     Vander Steeg rolled Lux further into the puddle before eventually lifting him off the street.(Lux Aff., ¶45, 48-49); (Nettles Aff., ¶36, 53-57); (Lang Aff., ¶4, Body cam footage of Zens at 0:36-0:44).

**RESPONSE: Disputed. The cited video evidence speaks for itself. Lt. Vander Steeg requested that Lux roll onto his side, while he briefly frisked him.  (Dkt. 61-2, Ex. B, Zens Body Camera Footage at 0:36-0:44)**

76.     Both Lux and Nettles were then placed into squad cars and arrested. (Lux Aff., ¶49); (Nettles Aff., ¶60).

**RESPONSE: Not disputed.**

77.     During the approximately ten minutes Lux struggled to breathe and was forced to remain face down in a puddle of water, Vander Steeg and Zens failed to assist Lux out of the puddle. (Lux Aff., ¶49); (Nettles Aff., ¶57-59); (Lang Aff., ¶5, Ex. C, Body cam footage of Deputy

17

Johnson at 1:02-3:17).

**RESPONSE: Plaintiffs' Proposed Fact does not comply with the requirements of Fed. R.
Civ. P. 56 (c) and Civ. L. R. 56(b)(2) of the Local Rules of the Eastern District, as it is not
supported by any reference to admissible evidence and is pure speculation. Therefore, the
Proposed Fact should not be considered.**

**Furthermore, Lux had free movement over his neck and face. (Vander Steeg Dep. 81-
82; 85:1-7)**

78.     Deputy Johnson failed to assist Lux out of the puddle for over a minute while he
was on the scene. (Lang Aff., ¶5, Ex. C, Body cam footage of Deputy Johnson at 1:02-3:17).

**RESPONSE: Not disputed that Deputy Johnson did not assist in arresting Lux.**

79.     When Zens slammed Nettles' head into the squad car, Vander Steeg failed to
intervene to stop each other from this use of force. (Nettles Aff., ¶57-59). (Lang Aff., ¶5, Ex. C,
Body cam footage of Deputy Johnson at 1:02-3:17).

**RESPONSE: Disputed. The cited video speaks for itself. Officer Zens performed a wall
stabilization technique on Nettles and Vander Steeg was standing next to Lux. (Dkt. 61-3,
Ex. C, Johnson Body Camera at 1:00-1:10)**

80.     Deputy Johnson witnessed both Lux face down in a puddle struggling to breathe
and witnessed Zens slam Nettles face into the squad car. (Lang Aff., ¶5, Ex. C, Body cam footage
of Deputy Johnson at 1:02-3:17).

**RESPONSE: Objection. This Proposed Fact is not material to the Whitewater Defendants'
Motion because it does not "affect the outcome of the suit [against the Whitewater
Defendants] under the governing law . . . .'" Felton v. Teel Plastics, Inc., 724 F. Supp. 2d 941,
958 (W.D. Wis. 2010) (quoting Jenkins v. Barlett, 487 F.3d 482, 492 (7th Cir. 2007)).**

**Furthermore, the cited video evidence speaks for itself. Lux's face was not in a**

18

puddle of water, and he saw Nettles attempt to flee from Zens. (Dkt. 61-3, Ex. C, Johnson Body Camera at 1:00-3:17)

81.    Deputy Johnson failed to intervene to assist Lux out of the puddle where he was struggling to breath. (Lux Aff., ¶49); (Nettles Aff., ¶57-59); (Lang Aff., ¶5, Ex. C, Body cam footage of Deputy Johnson at 1:02-3:17).

**RESPONSE: Objection. This Proposed Fact is not material to the Whitewater Defendants' Motion because it does not "affect the outcome of the suit [against the Whitewater Defendants] under the governing law . . . .'" Felton v. Teel Plastics, Inc., 724 F. Supp. 2d 941, 958 (W.D. Wis. 2010) (quoting Jenkins v. Barlett, 487 F.3d 482, 492 (7th Cir. 2007)).**

**Furthermore, the cited video evidence speaks for itself. Lux showed no signs that he was struggling to breath. (Dkt. 61-3, Ex. C, Johnson Body Camera 1:00-3:17)**

82.    Deputy Johnson failed to intervene or stop Zens from slamming Nettles head into the squad car and instead grabbed Nettles arm. (Lux Aff., ¶49); (Nettles Aff., ¶57-59); (Lang Aff., ¶5, Ex. C, Body cam footage of Deputy Johnson at 1:02-3:17).

**RESPONSE: Objection. This Proposed Fact is not material to the Whitewater Defendants' Motion because it does not "affect the outcome of the suit [against the Whitewater Defendants] under the governing law . . . .'" Felton v. Teel Plastics, Inc., 724 F. Supp. 2d 941, 958 (W.D. Wis. 2010) (quoting Jenkins v. Barlett, 487 F.3d 482, 492 (7th Cir. 2007)).**

**Furthermore, the cited video evidence speaks for itself. Officer Zens performed a wall-stabilization technique after Nettles attempted to flee from him. Deputy Johnson then grabbed Nettles arm to help Officer Zens handcuff Nettles. (Dkt. 61-3, Ex. C, Johnson Body Camera at 1:00-3:17)**

83.    Deputy Johnson was on scene for each of these events but failed to intervene or stop them from occurring. (Lux Aff., ¶49); (Nettles Aff., ¶57-59); (Lang Aff., ¶5, Ex. C, Body cam

19

footage of Deputy Johnson at 1:02-3:17).

**RESPONSE: Objection. This Proposed Fact is not material to the Whitewater Defendants'
Motion because it does not "affect the outcome of the suit [against the Whitewater
Defendants] under the governing law . . . .'" Felton v. Teel Plastics, Inc., 724 F. Supp. 2d 941,
958 (W.D. Wis. 2010) (quoting Jenkins v. Barlett, 487 F.3d 482, 492 (7th Cir. 2007)).**

**Further, affirmatively state that Johnson did not believe the Whitewater officers did
anything wrong at the scene. (Dkt. 38, ¶¶ 41-42)**

84. About a year prior to the September 20, 2018, incident Lux and Vander Steeg had
previously encountered each other. (Lux Aff., ¶50-51).

**RESPONSE: Plaintiffs' Proposed Fact does not comply with the requirements of Fed. R.
Civ. P. 56 (c) and Civ.L.R.56(b)(2) of the Local Rules of the Eastern District, as it is not
supported by any reference to admissible evidence. The proposed fact is also irrelevant to
the claims asserted in this matter. Therefore, the Proposed Fact should not be considered.**

85. Vander Steeg improperly searched Lux and issued him a citation. (Lux Aff., ¶50-
51).

**RESPONSE: Plaintiffs' Proposed Fact does not comply with the requirements of Fed. R.
Civ. P. 56 (c) and Civ. L. R. 56(b)(2) of the Local Rules of the Eastern District, as it is not
supported by any reference to admissible evidence. The proposed fact is also irrelevant to
the claims asserted in this matter. Therefore, the Proposed Fact should not be considered.**

86. The citation Vander Steeg issued Lux was eventually dismissed. (Lux Aff., ¶50-
51).

**RESPONSE: Plaintiffs' Proposed Fact does not comply with the requirements of Fed. R.
Civ. P. 56 (c) and Civ. L. R. 56(b)(2) of the Local Rules of the Eastern District, as it is not
supported by any reference to admissible evidence. The proposed fact is also irrelevant to**

20

**the claims asserted in this matter. Therefore, the Proposed Fact should not be considered.**

Dated this 4th day of November, 2021.

                         **GUNTA LAW OFFICES, S.C.**
                         **Attorneys for Defendants, City of Whitewater,**
                         **Aaron Raap, Adam Vander Steeg, Mike Zens and**
                         **Justin Stuppy**

By:     */s/ Kyle R. Moore*                
Gregg J. Gunta, WI State Bar No. 1004322
Ann C. Wirth, WI State Bar No. 1002469
Jasmyne M. Baynard, WI State Bar No. 1099898
Kyle R. Moore, WI State Bar No. 1101745
Kiley B. Zellner, WI State Bar No. 1056806
9898 West Bluemound Road, Suite 2
Wauwatosa, Wisconsin 53226
T: (414) 291-7979 / F: (414) 291-7960
Email: gjg@guntalaw.com
              acw@guntalaw.com
              jmb@guntalaw.com
              krm@guntalaw.com
              kbz@guntalaw.com